20 So.2d 331

**FLOYD et al. v. ANDRESS.**

I Div. 221.

Supreme Court of Alabama.

Dec. 21, 1944.

Rehearing Denied Jan. 18, 1945.

Barnett, Bugg & Lee and Alice F. Lee, all of Monroeville, for appellants.

C. L. Hybart, of Monroeville, for appellee.

STAKELY, Justice.

This is an appeal from a decree of the equity court sustaining the demurrer of W. J. Andress (appellee) to the cross-bill of Bertha L. Floyd and Charles Floyd (appellants). The original bill was filed by W. J. Andress in the circuit court of Monroe County, in equity, against Bertha L. Floyd and Charles Floyd, as respondents. The complainant alleged that certain lands described in the bill were jointly owned by the parties to the suit, that the lands could not be equitably divided without a sale, and prayed for a sale for division.

The respondents (appellants here) filed an answer denying among other things that complainant has any interest in the real estate and alleging that they own the entire title thereto. The further answer, which is prayed to be taken as a cross-bill, contains the requisite allegations to make it a statutory bill to quiet title to the lands described in the original bill (§ 1109 et seq., Title 7, Code of 1940). In addition thereto the cross-bill alleges on information and belief the fact to be that W. J. Andress claims an interest in the lands by virtue of a deed from J. R. Eddins and wife to W. J. Andress, which bears date of March 24, 1913, and which is recorded in the office of the judge of probate of Monroe County, Alabama, a copy thereof being attached to the cross-bill as Exhibit A and made a part thereof. This deed, as shown by the exhibit attached to the cross-bill, is a deed from J. R. Eddins and wife to W. J. Andress conveying an undivided one-half interest in certain lands in Monroe County, Alabama, specifically described in the deed, including the lands described in the original bill of complaint. The granting clause in the deed uses the words, "do grant, bargain, sell and convey unto the said W. J. Andress the following described real estate, to wit:"

The cross-bill further alleges that whatever claim the complainant has in and to said lands was acquired in equity and good conscience by and through a certain deed, a copy of which is attached to the cross-bill as Exhibit B, from A. R. Boulware, as commissioner, to said J. R. Eddins, which bears date of November 8, 1912, and is recorded in the office of the judge of probate of Monroe County, Alabama; that the aforementioned deed from A. R. Boulware, as commissioner, to J. R. Eddins was executed and delivered in pursuance of a joint purchase of lands described therein by J. R. Eddins and W. J. Andress and the deed should have been made to J. R. Eddins and W. J. Andress jointly; that when the said J. R. Eddins found that the deed was made to him individually he executed and delivered to the said W. J. Andress the aforementioned deed marked Exhibit A, for the sole purpose of legally vesting in the said W. J. Andress an undivided one-half interest in and to the lands acquired by deed from A. R. Boulware, as commissioner; that the

said deed served no other purpose than to vest in the said W. J. Andress an undivided one-half interest in and to whatever title was acquired through the joint purchase, which is evidenced by the deed from A. R. Boulware, as commissioner, to J. R. Eddins; that the said W. J. Andress understood and acquiesced in these transactions and understood that the said deed from J. R. Eddins and wife to W. J. Andress was not intended to include any warranty of any kind or character and that it did nothing more than convey to said Andress whatever title he should have acquired from the said deed from A. R. Boulware, as commissioner; that for something like thirty years the said W. J. Andress made no claim of any kind or character against the said J. R. Eddins on account of the aforementioned deed to the said Andress; that soon after the joint purchase by the said J. R. Eddins and W. J. Andress, the said Eddins and Andress employed a surveyor to run the lines of the lands they had jointly acquired and at that time, which was more than twenty-five years ago, they both ascertained and agreed between themselves that they had not actually acquired any part of the lands described in the original bill of complaint, that said lands were not owned by the parties whose interests were sold and conveyed by the above-mentioned deed from A. R. Boulware, as commissioner, to J. R. Eddins, but that the said lands were in fact owned and occupied by third parties, who were in no wise connected with the proceedings under which the deed from A. R. Boulware, as commissioner, was made; that at that time the said Eddins and Andress agreed that the said lands described in the original bill of complaint were not acquired by them and that neither of them owned any interest therein.

The allegations of the cross-bill further show that many years thereafter in, to-wit, 1933, J. R. Eddins purchased and acquired the lands described in the original bill of complaint from the true owners thereof by deeds executed to the said J. R. Eddins by such true owners, copies of such deeds being attached as exhibits to the cross-bill; that following such purchase J. R. Eddins went into immediate possession of said lands and that he and his successors in title have owned the same and continuously since then have been in the peaceable, open, notorious, exclusive, adverse possession thereof and that their predecessors in title had owned and exercised dominion over the said lands continuously for more than fifteen years prior to the execution of these deeds. The cross-bill further alleges that the cross-complainants are now the owners of the entire title to the lands described in the original bill which were owned by the said J. R. Eddins at the time of his death in 1940, having acquired the same under and by virtue of the last will and testament of J. R. Eddins, deceased. That the said W. J. Andress never did claim to own any part of or interest in said lands under the said deed of March 24, 1913, until some three or four years ago.

In the cross-bill, cross-complainants pray that the court will declare that the said W. J. Andress owns no right or title or interest in and holds no claim or encumbrance upon the said lands and prays for such other, further and different relief as they may have right to in the premises.

W. J. Andress demurred to the cross-bill on the following grounds:

"1. That said cross bill does not contain equity.

"2. That there is no necessity for a cross bill in this proceeding.

"3. That Respondents could obtain such relief as they are entitled to under his answer in accordance with Rule 26 of the equity practice.

"4. That it appears that all agreements made and entered into by complainant and J. R. Eddins prior to the execution of the deed from J. R. Eddins the complainant, W. J. Andress conveying a one half interest in the lands involved in this case were merged in said conveyance.

"5. That the conveyance from J. R. Eddins to W. J. Andress mentioned in the ninth paragraph of the cross bill of complaint speaks for itself and clearly shows that J. R. Eddins conveyed a one-half interest in the property involved in this suit to W. J. Andress by statutory warranty deed.

"6. That the claim of J. R. Eddins to the entire interest of the property involved is based upon a stale demand.

"7. That it clearly appears that J. R. Eddins and those who claim under him are guilty of laches."

As stated above, the court sustained the foregoing demurrer to the cross-bill, and hence this appeal.

■■ By the demurrer to the cross-bill the complainant (appellee) not only questions the claim of title of respondents (appellants) to the undivided one-half interest in the property claimed by complainant, but also questions the right of respondents to seek relief by a cross-bill. The original bill of complaint seeks a sale of the lands described in the bill for division. It is quite true that upon the issues made by the original bill and the answer, a sale for division will be denied where it appears from the proof that complainant has no title to the property. It may be also here noted that proof of respondents' title by adverse possession, as alleged in the cross-bill, may be shown under the issues made by the original bill and answer. § 326, Title 7, Code of 1940; Price v. Hall, 226 Ala. 372, 147 So. 156; Sandlin v. Anders, 210 Ala. 396, 98 So. 299; Bullock v. Knox, 96 Ala. 195, 11 So. 339.

Our analysis of the cross-bill shows that it has three aspects, (1) a statutory bill to quiet title; (2) a bill to quiet title independent of statute; and (3) a bill for reformation. Accordingly we shall proceed to consider each of these aspects and then, in view of the insistence of counsel, consider the right, if any, of the respondents to proceed by cross-bill in the light of § 191, Title 47, Code of 1940, which will be set out later.

■ The cross-bill shows that J. R. Eddins executed and delivered to W. J. Andress a deed dated March 24, 1913, which is a statutory warranty deed. § 154, Title 47, Code of 1940; Vary v. Smith et al., 162 Ala. 457, 50 So. 187. At that time J. R. Eddins had no title to that part of the property described in the deed, which is involved in this suit. Subsequently he acquired a good title by deeds to him from the true owners. Accordingly such title so subsequently acquired by J. R. Eddins inured to the benefit of W. J. Andress under the warranty contained in the deed to him from J. R. Eddins dated March 24, 1913.

"It is established in this jurisdiction (1) that, where a mortgage contains covenants of warranty (section 6926, Code [Code 1940, Tit. 47, § 154]), after-acquired title inures to the benefit of the mortgagee, and the property embraced therein and so acquired is bound by the mortgage lien. 41 C.J. § 395, p. 478; Hunter v. Taylor, 189 Ala. 104, 66 So. 671; Vary v. Smith, 162 Ala. 457, 50 So. 187; Hall v. Slaughter, 155 Ala. 625, 47 So. 103; Chapman v.

Abrahams, 61 Ala. 108; Howze v. Dew, 90 Ala. 178, 183, 7 So. 239, 24 Am.St.Rep. 783." First Nat. Bank v. Cash, 220 Ala. 319, 326, 125 So. 28, 34.

■■ The cross-bill contains the allegations requisite for a statutory bill to quiet title and this court has held that when this is the situation, the bill will not be rendered invalid because it goes further and states the source of complainant's title, since such allegation is surplusage. Campbell v. Rice, 244 Ala. 144, 12 So.2d 385. This principle is applied even though the additional allegations show no title in complainant. Vaughan et al. v. Palmore, 176 Ala. 72, 57 So. 488. But while the cross-bill contains the allegation of no suit pending, as required by the statute, yet when this allegation is considered in the light of the original bill, it appears that there was in fact a suit pending in which the title is involved when the cross-bill was filed. Owen v. Montgomery, 230 Ala. 574, 161 So. 816. For this reason we will not sustain the cross-bill as a statutory bill to quiet title.

■■ Can the cross-bill be regarded as a bill to quiet title independent of the statute? Our cases recognize such bills where the owner is in possession and where the alleged cloud is not void on its face and extrinsic evidence is necessary to show its invalidity. May v. Granger, 224 Ala. 208, 139 So. 569; Bank of Henry v. Elkins, 165 Ala. 628, 51 So. 821. We do not think, however, that, under the allegations of fact, the cross-bill can be held good on this theory, because this would call for a violation of the well-known rule that parol evidence is not admissible to contradict or vary the terms of a valid legal instrument. Lost Creek Coal & Mineral Land Co. v. Hendon, 215 Ala. 212, 110 So. 308. The terms of the deed, dated March 24, 1913, cannot be contradicted or varied by parol evidence.

■ But by giving a fair and reasonable interpretation to the allegations of the cross-bill (Zeigler v. Zeigler, 180 Ala. 246, 60 So. 810), we think that the cross-complainants are entitled to have the deed dated March 24, 1913, reformed so as to speak the true intention of the parties. § 136, Title 47, Code of 1940; Orr, Scroggins & Hume v. Echols, 119 Ala. 340, 24 So. 357; Moore et al. v. Tate, 114 Ala. 582, 21 So. 820; City of Oneonta v. Sawyer, 244 Ala. 25, 12 So.2d 82; 53 C.J. p. 935.

This will not constitute a violation of the parol evidence rule because "the nature of the action is such that it is outside the operation of the parol-evidence rule." 45 Am.Jur. § 113, p. 650. A cross-bill for the purpose of reformation is appropriate. Owen v. Montgomery, supra. Reformation can be granted under the general prayer for relief. Owen v. Montgomery, supra. Reformation can be accomplished by changing the words "grant, bargain, sell and convey" to words of mere quitclaim as applicable to this particular land.

"The rules for the reformation of a writing on account of a mistake have been stated to be, 'that when the instrument speaks the true agreement between the parties, equity will not reform it because one or both of them may have mistaken its legal consequences. * * * When the legal effect of the terms agreed upon by the parties to be employed in a written instrument, through a misapprehension or ignorance of their import, results in a contract different from that really entered into by them, the court of equity, in the exercise of its moral jurisdiction will reform it.' Moore v. Tate, 114 Ala. 582, 21 So. 820, and authorities there cited.

"Mr. Pomeroy, discussing the question, lays down the rule, sanctioned by a great array of authorities he cites, including the decisions of our own court, to be, that 'If a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing.'" Orr, Scroggins & Hume v. Echols, 119 Ala. 340, 344, 345, 24 So. 357, 358.

The demurrer takes the position that the cross-complainants are not entitled to relief because of laches. This view is not sound. The cross-bill shows that for about thirty years W. J. Andress made no claim of any kind or character against J. R. Eddins on account of the deed dated March 24, 1913. In addition more than twenty-five years ago, W. J. Andress and J. R. Eddins together employed a surveyor to run the lines of the lands described in the deed. They both then learned and agreed that they had no title to such lands, the deed was in error and third parties owned the lands. Furthermore it was not until three or four years ago that W. J. Andress made

any claim to the lands under the deed of March 24, 1913.

"The respondents claim that the complainant is not entitled to relief because of laches. The legal title appears to have resided in the husband for 28 years before his death, and while, as we have already said, the husband, during all those years, is alleged to have held those lands in recognition of his wife's right to them, the respondents contend that, as the wife during that period took no steps to have the legal title vested in her, she has by her laches lost her right to appeal to a court of equity for relief. 'Staleness or laches is founded upon acquiescence in the assertion of adverse rights and unreasonable delay on complainant's part in not asserting her own, to the prejudice of the adverse party.' * * * 'Acquiescence involves knowledge, either actual or imputable, of the assertion of an adverse right. If there is no assertion of the adverse right, there can, of course, be no acquiescence.' Haney v. Legg et al., 129 Ala. 619, 30 So. 34, 87 Am.St.Rep. 81. The above quotation from the case last cited, it seems to us, settles the question now under discussion adversely to appellants. There has not been, according to the allegations of the bill of complaint, an assertion of an adverse right to the rights of appellee, and the delay of complainant in filing her bill has resulted in no prejudice to any party to the bill." Zeigler v. Zeigler, 180 Ala. 246, 251, 252, 60 So. 810, 812.

But appellee contends that all the rights of appellants can be settled in this suit as provided in § 189, Title 47, Code of 1940. With this we agree. Appellee goes further, however, and contends that under § 191, Title 47, Code of 1940, the trial court has the broad power to direct the issue as to the title of the defendants (appellants) and the trial court will not be put in error, if within that power the trial court directs the issue under answer and not on cross-bill. § 191, Title 47, Code of 1940, is as follows:

"Practice in partition suits when title or adverse claim involved.—In suits for partition of lands, either by metes and bounds or by sale for division when the same cannot be equitably partitioned among the owners, if the defendant denies the title of the complainant or asserts an adverse claim or title in himself, the circuit judge need not dismiss the bill, but may direct the issue as to the title of the complainant,

or as to such adverse claim or title of the defendant, to be tried as other issues of fact are triable in equity cases."

It is clear that relief by reformation is affirmative in character and not within the issues presented by bill to sell for division and that ordinarily such affirmative relief can only be granted on cross-bill. See Marshall v. Rogers, 230 Ala. 305, 160 So. 865.

In the light of § 191, supra, have appellants the right to insist on a cross-bill or an answer, which will be taken as a cross-bill? We consider that the appellants have such right. The statute was not intended to confer on the court the right to deprive the defendant of relief by way of a cross-bill, where affirmative relief is properly sought.

The lower court was in error in sustaining the demurrer to the cross-bill. "Sustaining demurrers going to the equity of the bill as a whole is error if the bill has equity in any aspect." Arbuthnot v. Thatcher et al., 237 Ala. 593, 188 So. 245, 247. Accordingly the decree of the lower court is reversed and the cause is remanded.

Reversed and remanded.

GARDNER, C. J., and THOMAS and FOSTER, JJ., concur.