88 So.2d 163

**Ashley GIBSON**

v.

**ELBA EXCHANGE BANK et al.**

4 Div. 850.

Supreme Court of Alabama.

Dec. 22, 1955.

Rehearing Denied June 21, 1956.

C. L. Rowe, Elba, and Lightfoot & Bricken, Luverne, for appellant.

504

J. C. Fleming, Elba, Alton L. Turner, Luverne, and J. O. Sentell, Jr., Montgomery, for appellees.

STAKELY, Justice.

Ashley Gibson (appellant) filed his original bill of complaint against Elba Exchange Bank, a corporation, Basil Kennedy, as Sheriff of Crenshaw County, Alabama, and Ivey Sikes (appellees), to determine the interest of Elba Exchange Bank in certain lands in Crenshaw County, Alabama, described in the bill of complant, arising out of a personal judgment by default against Ashley Gibson rendered on July 31, 1950, in favor of Elba Exchange Bank in the Circuit Court of Coffee County, Alabama, Enterprise Division. The judgment was rendered in a suit by the bank against Whitewater Lumber Company, a partnership, and Ashley Gibson and J. R. Faircloth, individually, and as partners, doing business under the aforesaid partnership name. A certificate of the judgment was recorded in the Probate Court of Crenshaw County on October 2, 1950. Execution was issued and placed in the hands of Basil Kennedy, as Sheriff, and under the authority thereof the sheriff on March 17, 1955, levied on the lands described in the bill of complaint and was proceeding to advertise the same for sale under execution.

The present appeal is from the decree of the Circuit Court of Crenshaw County, in Equity, (1) sustaining respondents' demurrer to the bill of complaint and to each aspect thereof separately and severally and (2) dissolving the injunction theretofore issued restraining execution sale of the lands described in the bill of complaint and the exhibits thereto.

The allegations of the bill in substance show the following. Elba Exchange Bank filed a complaint in the aforesaid suit on April 5, 1950, in the Circuit Court of Coffee County, Enterprise Division. The first count was unnumbered and was in detinue for certain specifically described personal property without hire or use thereof during the detention. The second count was for $4,584.15 due by promissory note made by the defendants on the 2nd day of February, 1949, and payable on the first day of May, 1949, with interest and attorney's fees. The third count was for $1,760 due by promissory note made by the defendants on December 1, 1944, and payable on March 1, 1945, with interest and for attorney's fees. The original summons was executed by H. G. Horn as Sheriff of Crenshaw County by leaving a copy of the summons and complaint with Ashley Gibson in Crenshaw County on May 6, 1950. J. R. Faircloth was a nonresident of the state and no service was personally had on him. Neither the partnership known as Whitewater Lumber Company nor J. R. Faircloth nor Ashley Gibson filed any appearance or pleading in the suit. The court entered a default judgment against J. R. Faircloth and Ashley Gibson as partners doing business as Whitewater Lumber Company for a portion of the "property sued for in the unnumbered count of the complaint and against Ashley Gibson individually, with waiver of exemption as to personal property on the counts based on the notes in the amounts of $5,159.-19." No lawful levy was ever made on the property of the partnership and H. G. Horn as Sheriff of Crenshaw County never made nor attempted to make any levy of the writ of detinue and the same when returned by the sheriff after service on Ashley Gibson did not have written thereon any data indicating that the aforesaid sheriff had taken possession of any property as the same now appears on the return of the sheriff, which is attached to the bill, numbered Exhibit 2 and made a part of the bill.

The bill further alleges in substance the following. Some agent or representative of the respondent bank, acting within the line and scope of his agency or employment, unlawfully entered on the original of the aforesaid return of Sheriff H. G Horn in the place on said return where a sheriff making a levy on personal property normally lists the personal property seized and after the words "the following described property" the words and figures "three 4 wheel trailers with tires, 10,000 ft. of scrap lumber, one planer mill complete, one portable boiler."

By the unlawful act of the agent, servant or representative of the bank in entering on the above return the signature of Sheriff Horn, the description of the personal property allegedly seized by Sheriff Horn, the Circuit Court of Coffee County and the Judge thereof who presided in the case of Elba Exchange Bank v. Whitewater Lumber Company et al., and who entered the bench notes in the aforesaid case and rendered judgment in the case, was misled into entering judgment for the respondent bank and against the defendant, Whitewater Lumber Company, a partnership, for the property sued for as follows, to wit, Three four wheel trailers with tires, 10,000 feet scrap lumber, one planer mill complete, one portable boiler.

The bill further alleged in substance the following. The personal property described in the return of Sheriff H. G. Horn was at all times, including May 6, 1950, the date of the alleged levy, located at New Brockton in the enterprise Division of the Coffee County, Alabama, Court and was not situated or located in Crenshaw County, Alabama and if in truth and in fact H. G. Horn undertook to and did execute the writ of detinue in the aforesaid suit by seizing the personal property which appears on the sheriff's return to the writ, the act of the sheriff in making said seizure in Coffee County, Alabama, was wholly void.

The acts of the presiding Judge in the Coffee County Circuit Court in entering the aforesaid bench notes and in entering said judgment relating to the property allegedly seized under the writ of detinue, were wholly void and the judgment so entered relating to the property allegedly seized under the writ of detinue, is wholly void.

Notwithstanding the fact that the judgment in detinue was wholly void, as afore-

said, respondent bank through its agents acting in the line or scope of their authority as shown in the aforesaid suit in Coffee County, unlawfully took into its possession under the apparent authority of said judgment the property described in said unnumbered count of the complaint in said suit and converted the same to its own use without in any manner giving this complainant, Ashley Gibson, credit therefor when the personal judgment was entered against him.

The failure of the respondent's agent or representatives to apprise the court of the true facts in the aforesaid matter amounts to fraud in the legal sense in the procurement of that phase of said judgment rendered against Ashley Gibson, individually, and for fraud in the procurement of said judgment against Ashley Gibson and the aforesaid judgment of $5,159.19, is wholly void.

A certificate of judgment of the Circuit Court of Coffee County hereinabove referred to was caused by the respondent bank (which was the plaintiff in the suit in the circuit court), to be recorded in the probate records of Crenshaw County on October 23, 1950.

Notwithstanding the fact that at the time of the recordation of the certificate of judgment in the probate court of Crenshaw County, the complainant Ashley Gibson, had record title, free from lien or incumbrance other than the alleged lien of said recorded judgment, of real property greatly in excess of value in the amount shown in the recorded judgment to be due by Ashley Gibson to the respondent bank, respondent bank took no legal steps to collect the aforesaid judgment by the issuance of execution until a few weeks after the death of the aforesaid H. G. Horn, his death occurring on towit the 27th day of January, 1955. After the death of the Sheriff H. G. Horn, the respondent bank caused execution to be issued out of the Circuit Court of Coffee County on said judgment and caused the same to be put in the hands of Basil Kennedy, the presently serving Sheriff of Crenshaw County and pursuant to said execution, the said Basil Kennedy as Sheriff did levy the execution on the lands described in a notice of levy signed by Basil Kennedy as Sheriff. Copy of the notice of the levy is attached to the bill, marked an exhibit thereto and made a part thereof.

The complainant either owns entirely or jointly with others and is now in peaceable possession of all the lands levied upon described in the notice of levy and has been in such possession for many years with the exception that as to the lands described in Tract 7, as designated in said notice of levy, complainant Ashley Gibson conveyed the same to respondent Ivey Sikes by warranty deed dated November 22, 1954. This deed is recorded in the Probate Records of Crenshaw County, Alabama, in Deed Book 70 at pages 187–188 as to which last described lands complainant Ashley Gibson owned and was in peaceable possession of an undivided ⅓rd interest in the same until the execution of said deed to Sikes, and the said Sikes has thereafter owned and has been in and is now in peaceable possession of the same.

Complainant is bound to warrant and defend the interest which he conveyed to Ivey Sikes. He called upon the said Sikes to join with him as complainant in this bill of complaint in order that the spurious cloud on the title of Sikes to the lands which complainant conveyed to him might be cancelled. Sikes refused to join complainant, in this bill of complaint, whereupon complainant finds it necessary to make Sikes a respondent hereto in order that all interests in said lands may be before the the court. The lands described in the notice of levy are being advertised for sale by the respondent Basil Kennedy, Sheriff as aforesaid, under an execution issued out of the Circuit Court of Coffee County and the execution sale is scheduled for April 15, 1955.

The respondent bank has no valid and lawful lien upon the lands levied upon by the respondent sheriff by virtue of the judgment of the Circuit Court of Coffee County. There is no suit pending in any court to enforce or test the validity of respondent's possession, title, claim or incum-

brance in and to said lands or any part or parcel thereof.

The recorded judgment is an apparent lien on the property of the complainant described in said notice and levy and extrinsic evidence is necessary to show the invalidity of the alleged lien of said judgment and execution and the complainant is entitled to have a proper decree of the court cancelling and removing the cloud on his title and on the title of the respondent Sikes to the lands which have been referred to, as aforesaid.

In the bill the following allegation is made, "And complainant calls upon the respondent bank to set forth and specify its title, claim or interest in or incumbrance upon the aforesaid lands described in the notice and levy and how and by what instrument or right the same is derived or created."

The bill contains allegations designed to show that the complainant was not guilty of neglect in failing to discover the alleged fraud of the bank at an earlier date and that there was no laches in failing to file this bill at an earlier date. Since we find it unnecessary to discuss this feature of the case, a statement of these allegations is omitted.

I. Assignments of error question the action of the court in sustaining the demurrer to that aspect of the bill which claims that the judgment against Ashley Gibson was the result of extrinsic fraud. It should be remembered that the allegations of the bill show that the summons and complaint filed by the Elba Exchange Bank was served on Ashley Gibson individually and as a member of the partnership known as Whitewater Lumber Company. One count of the complaint was in detinue for the recovery of certain specified articles of personal property and the other two counts were to recover amounts due on notes as described in counts two and three of the complaint. The allegations of the bill further show that neither the partnership nor Ashley Gibson filed any appearance or pleading in the suit and that a judgment by default was taken against the partnership on the count in detinue and against Ashley Gibson for the amount sued for in the counts on the notes. While we do not find a specific reference to the matter, we shall assume for the sake of argument because counsel seem to concede it, that the notes sued on were secured by a chattel mortgage made by the partnership to the bank. The property sued for was the property embraced in the mortgage and the notes sued on were the notes secured by the mortgage. The judgment in detinue and the judgment on the notes were contained in the same judgment entry on August 31, 1951.

The allegations which seek to show a fraud on the court may be summarized as (1) that the unlawful act of the respondent bank's representative in falsely entering on the sheriff's return, personal property allegedly seized by the sheriff misled the trial judge in entering a judgment against Whitewater Lumber Company, a partnership, for the personal property and (2) that the failure of the respondent bank to apprise the trial judge of the true facts relating to the alleged levy constituted a fraud in the procurement of the judgment rendered against Ashley Gibson, individually, in the sum of $5,159.19, in that if the trial court had been apprised of such facts he would have required the bank to present evidence concerning the value of the property of the partnership taken into possession by the bank and to credit Ashley Gibson with the reasonable value of such property.

We are not satisfied that the facts alleged show extrinsic fraud in the concoction of and resulting in a personal judgment against Ashley Gibson. The seizure of the property under the writ of detinue was not essential to obtain a judgment for the property sued for. Under § 936, Title 7, Code of 1940, it is expressly provided that in a detinue suit where the defendant fails to appear and plead within the time provided by law, the plaintiff may take judgment against the defendant for the property sued for. There was no recovery of damages for the detention of the property. Under § 936 it was not necessary for the value of the property sued for to be assessed. It

may be further noted that neither the plaintiff nor the defendant posted any forthcoming bond.

■ It should also be noted that according to the bill the bank took possession of the personal property of the partnership not prior to but pursuant and subsequent to the judgment in detinue. Accordingly the trial judge was authorized by law to enter a judgment in favor of the plaintiff for the property sued for. The judgment for the amount due on the notes on the other counts of the complaint was entered by the court at the same time and in entering these judgment entries, it was not necessary for the value of the property to be ascertained and in fact the judgment entry shows that the value of the property was not ascertained. Accordingly, it does not appear that the alteration of the sheriff's return, reprehensible as such act was (assuming as we must that the allegations of the bill are true), had anything to do with the authority and jurisdiction of the court to render a judgment for the property sued for or that the value of the property sued for should have been taken into consideration by the court in ascertaining the amount due on the notes. In other words, the alteration of the sheriff's return was not a contributing cause to the amount of the money judgment. Under the authorities fraud as a basis of relief against the judgment must be a contributing cause of the injury. Quick v. McDonald, 214 Ala. 587, 108 So. 529. In Freeman on Judgments, Vol. 3, p. 2563, it is said: "But where the fraud consists of misrepresentations, they must have been made with respect to a material matter of fact and the other conditions entitling a party to relief from fraud must be shown to exist, and before relief may be granted it must appear that the alleged fraud really prevented the complaining party from making a full and fair defense to the action or presentation of his case, or, in other words, that the fraud was instrumental in procuring the judgment."

Furthermore in Fancher v. Fancher, 262 Ala. 489, 80 So.2d 248, 250, this court said: " 'A party who ignores a summons and, without good excuse neglects to make his defense at the proper time has no standing in any court when he seeks to avoid the resulting judgment or decree.' " We are unable to see how it can follow that alteration in the levy of the sheriff misled the court in the rendition of the money judgment against Ashley Gibson or that the complainant is now entitled to have that judgment vacated.

■ It is also well to note that the defendant in a detinue action in a suit by a mortgagee may upon suggestion require the ascertainment of the amount of the mortgage debt. § 929, Title 7, Code of 1940. Under the allegations of the bill Ashley Gibson not only made no effort to defend the suit but he made no effort under the statute to require the ascertainment of the balance due on the mortgage debt.

■ As we have shown an analysis of the allegations shows that the real contention of Ashley Gibson is that the Elba Exchange Bank failed to give him proper credits on the judgment rendered. As we have shown the bank took possession of personal property under the apparent authority of the judgment and therefore the bank was not in possession of the property until after the judgment. Certainly no credit was proper until the bank got possession of the property.

It appears to us that Ashley Gibson should have applied to the trial court for relief under the authority provided in § 128, Title 13, Code of 1940, and under the procedure provided in § 568, Title 7, Code of 1940. In Henderson v. Holman, 193 Ala. 262, 69 So. 424, 425, this court said:

"If the process is excessive in amount, and its execution would impose injustice, because total or partial satisfaction of the judgment has been already afforded, the defendant in the judgment has an adequate remedy in the court from which the process has issued. Code, § 3256 (Title 13, § 128) * * *. The power of the court to control its process, to quash it, or to give it an effect not inconsistent with substantial justice under the judgment

the process would enforce, is inherent and is never doubted."

We consider that the court acted correctly in sustaining the demurrer to the aspect of the bill which sought to show that it was the result of extrinsic fraud.

■ II. The court was correct in sustaining the demurrer to the aspect of the bill seeking to set up a statutory bill to quiet title. The bill contains the allegations requisite for a statutory bill to quiet title, but while the bill alleges that no suit is pending as required by the statute, the allegations taken together show that there is a suit pending. Floyd v. Andress, 246 Ala. 301, 20 So.2d 331; McCary v. Crumpton, Ala., 83 So.2d 309 [1]. Under the allegations of the bill it appears that an execution on the judgment had been levied upon the lands of the defendant and a certificate of the judgment recorded in the probate court in the county where the land is situated. The purpose of statutes providing for a statutory bill to quiet title is to give a remedy to one in possession of land as owner where another person has claimed an interest which he does not seek to enforce. Adler v. Sullivan, 115 Ala. 582, 22 So. 87. The levy on an execution on the judgment against Ashley Gibson shows an effort and intent on the part of the Elba Exchange Bank to enforce the lien of the recorded judgment. This is a suit within the spirit of the word as used in § 1109, Title 7, Code of 1940. Dobbins v. First National Bank of Peoria, 112 Ill. 553. In the case of Dobbins v. First National Bank of Peoria, supra, it was said:

"Learned counsel, however, suggest that the unsatisfied Dobbins judgment was neither a suit nor a proceeding. What was it then? The meaning of the word 'suit' in a legal sense, as given, by Webster is: 'an attempt to gain an end by legal process.' What was the end to be attained in this case? Confessedly, the debt for which the judgment was obtained. * * * Black-

stone's definition of the word 'suit' is in substance the same as Webster's. Execution of the judgment we have always understood to be the final step in a suit at law. * * *."

■ III. Another aspect of the bill seeks to quiet title independent of the statutory system to quiet title set up in § 1109 et seq., Title 7, Code of 1940. In considering this aspect of the bill we must take into consideration the other allegations of the bill which undertake to show that the judgment was the result of extrinsic fraud. Since we hold that there was no fraud resulting in the judgment under the allegations of the bill and the lien of the recorded judgment good, there is no justification for a bill independent of the statute to quiet the title, because the title of the complainant is not affected by a hostile claim, apparently good, but really defective. Rea v. Longstreet & Sedgwick, 54 Ala. 291. A cloud upon title is that which appears to be title, but in law and in fact is not title. Winters v. Powell, 180 Ala. 425, 61 So. 96.

■ IV. Finally where there is no equity in the bill to sustain an injunction, there was no error in dissolving the injunction upon a motion which has that as one of its grounds. Richey v. Butler, 255 Ala. 150, 50 So.2d 441; Mitchell v. Jewish Progressive Club, 253 Ala. 195, 43 So.2d 529, 20 A.L.R.2d 339; Auto Mut. Indemnity Co. v. Moore, 235 Ala. 426, 179 So. 368. This court has said that, "A bill without equity will not support an injunction of any character under any circumstances." Williams v. Still, 263 Ala. 214, 82 So.2d 230.

It results that the court acted correctly in sustaining the demurrer to the bill and to each aspect thereof and in dissolving the injunction which had been asked to prevent the sale of the property under levy of execution.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.

1. 263 Ala. 576.