519 So.2d 480 (1987)
ALABAMA FARM BUREAU INSURANCE COMPANY
v.
Ricky HUNT and Laura Hunt.
Rita W. MOORE, Administratrix of the Estate of Dr. Arthur E. Moore, Deceased
v.
Ricky HUNT and Laura Hunt.
BAPTIST MEDICAL CENTER-CHILTON
v.
Ricky HUNT and Laura Hunt.
86-590, 86-597 and 86-632.
Supreme Court of Alabama.
December 23, 1987.
W.J. McDaniel and William A. Mudd of McDaniel, Hall, Conerly & Lusk, Birmingham, for appellant Ala. Farm Bur. Ins. Co.
Fred W. Tyson of Rushton, Stakely, Johnston & Garrett, Montgomery, for appellant Rita W. Moore, Administratrix, etc.
C. Jeffery Ash of Carpenter & Gidiere, Montgomery, for appellant Baptist Medical Center-Chilton.
John W. Haley and Francis H. Hare, Jr., of Hare, Wynn, Newell & Newton, Birmingham, for appellees.
PER CURIAM.
The defendantsAlabama Farm Bureau Insurance Co. (hereinafter "Farm Bureau"), Rita Moore (hereinafter "Moore"), and Baptist Medical Center-Chilton (hereinafter "Baptist")appeal from a summary judgment for the plaintiffs, Ricky and Laura Hunt. We affirm the judgment reforming a general release, pursuant to Ala. Code 1975, § 8-1-2, to reflect "the true intention of the parties," a pro tanto release.
*481 The Hunts filed a petition for reformation of a general release executed by them on September 17, 1983. The trial court entered an order granting the reformation and converting the general release to a pro tanto release, releasing only Farm Bureau and the insureds, Danny and Frances Gilmore, based upon the trial court's finding of the true intention of the parties. The trial court's order further declared that the pro tanto release entitled other defendants to a credit of $25,000, the amount of consideration expressed in the release, if a judgment were rendered against them.

Issues Presented
1. Whether the trial court erred in granting the Hunts' motion for summary judgment to reform the release.
2. Whether the settlement and "general" release of the original tort-feasors, Danny and Frances Gilmore, bar the plaintiffs' wrongful death claim against the admitting hospital and the treating physician for alleged subsequent acts of negligence.

The Facts
On March 22, 1983, Sonya Nicole Hunt, age 3, fell down a flight of stairs, while she was visiting in the home of her aunt and uncle, Frances and Danny Gilmore. The Gilmores took her to Baptist, where she was X-rayed and examined by Dr. Moore, and then released. Later that night, Sonya went into a coma. The Gilmores called rescue personnel, who called a helicopter. Sonya was transported to University Hospital in Birmingham, where numerous doctors treated her for a skull fracture and a blood clot. Sonya died on March 28, 1983.
The Gilmores, as the insureds under a homeowners' insurance policy with Farm Bureau, reported the accident to the insurer, whose adjuster, Don Hale, conducted an investigation and discussed the accident with the Gilmores. On September 12, 1983, at Hale's request, Mrs. Gilmore went to the Farm Bureau office and picked up a $25,000 check made payable to the Hunts. At that time, Hale advised her that the Hunts had to sign a release in order to cash the check. Hale did not show Mrs. Gilmore the release document, nor did he explain its contents to her.
On September 17, 1983, Mrs. Gilmore and the Hunts went to the Farm Bureau office. Neither Hale nor the Gilmores' agent, Bob Cook, was present. Two Farm Bureau employees, Evelyn Champion and Wanda Hewitt, were in the office when Mrs. Gilmore and the Hunts arrived. Mr. Hunt read the filled-in blanks on the form but did not read the entire form. According to the Hunts, after Mrs. Champion explained to them that the form released the Gilmores and Farm Bureau, they executed the document.
The Hunts petitioned for reformation of contract against the Gilmores and Farm Bureau, alleging that they understood the release to be a pro tanto settlement with the Gilmores and Farm Bureau only, and that the Hunts would have the right to proceed against any other responsible parties. By amendments, the Hunts first added Baptist and Dr. Moore as parties to their petition for reformation and then added a claim for wrongful death based on the alleged negligence of Baptist and Dr. Moore. After Dr. Moore died, his widow and administratrix, Rita Moore, was substituted as a party defendant.
All the defendants appeal from the trial court's order granting the Hunts' motion for summary judgment and reforming the release. (The partial summary judgment as to Baptist and Moore was made final pursuant to Rule 54(b), A.R.Civ.P.)

Appellants' Argument
Appellants rely on Baker v. Ball, 473 So.2d 1031 (Ala.1985), and Conley v. Harry J. Whelchel Co., 410 So.2d 14 (Ala.1982), for the following propositions:
"[B]y executing a general release ... a party releases all tort-feasors against whom a cause of action is not specifically reserved, regardless of whether those tort-feasors are parties to the release or are expressly mentioned therein."
Baker, 473 So.2d at 1035.
"In the absence of fraud, a release supported by a valuable consideration, unambiguous *482 in meaning, will be given effect according to the intention of the parties to be judged from what appears within the four corners of the instrument itself and parol evidence is not admissible to impeach it or vary its terms."
Conley, 410 So.2d at 15.
Alternatively, the appellants contend that 1) the testimony of Farm Bureau's claims agent creates a triable factual issue with respect to the "intention of the parties," which precludes disposition by summary judgment on the plaintiffs' claim for reformation of the contract of release; and 2) parol evidence is not admissible to prove "intention of the parties."

Appellees' Response
Primarily, the Hunts rely on Irvin v. Griffin Corp., 808 F.2d 802 (11th Cir.1987), expressly adopting this Court's dictum in Conley, supra, as the basis for upholding the reformation of a general release. Alternatively, the Hunts contend that, in no event, could the parties to the instant contract have intended to release an independent and unrelated cause of action against other tort-feasors.

The Decision
Although we reject the Hunts' alternative "independent cause of action" contention as a basis for upholding the trial court's reformation of the release,[1] we accept the holding and rationale of the 11th Circuit's Irvin case, supra, as a correct expression of Alabama law. Except for a collateral "necessary parties" issue in Irvin, which is not in issue here, Irvin and the instant case are virtually identical.[2] Therefore, at the risk of overburdening this opinion, we quote at length from Irvin:
"Under Alabama law, an injured party's execution of a general release arising from a tort claim operates as a bar to any other potential claim of the party arising from the same tort. The general release operates in favor of other alleged tortfeasors and releases them from liability. This is simply a reflection of the old common law rule, that one who accepts payments from one tortfeasor and executes a release, which, in express terms, releases `any and all persons' is held to have discharged both the payer party as well as other tortfeasors not party to the release agreement. Thompson v. N.C. St. L. Railway, [160 Ala. 590] 49 So. 340 (Ala.1909); Wright v. McCord, [205 Ala. 122] 88 So. 150 (Ala.1922). However, the common law rule has been modified by statute and a release executed in writing in a general form[,] as was the case below, does not[,] ipso facto, discharge all other potential parties from liability. By statute, the Legislature has provided for an `intention of the [parties'] test. Alabama has codified the general rule regarding release as follows:
"`All receipts, releases and discharges in writing, whether of debt or record, a contract under seal or otherwise, must have effect, according to the intention of the parties.'
"Section 12-21-109, Code of Alabama (1975). The major substantive change in the common law rule was that of modifying the law regarding settlements or releases, and changing it according to the law of contracts, that is, that the release must be given effect according to the intentions of the parties. Thus, under Alabama law, the common law rule on the subject of general releases has been modified by the intention of the [parties] standard of contract law. In so doing, courts have recognized the validity of both pro tanto releases and general releases. In the instant case, the appellant sought a reformation of the release executed between her and the insured, Z.D. Burgett, and his insurance company, to *483 effect the true intention of the parties to execute a pro tanto relelase only, releasing the parties to the agreement from liability. The reformation of the release was sought pursuant to § 8-1-2 of the Alabama Code of 1975, which provides that:
"`When, through fraud, a mutual mistake of the parties or mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised by the court on the application of the party aggrieved so as to express that intention, so far as it can be done without prejudice to the rights acquired by third persons in good faith and for value.' (Emphasis added.)
"The circuit court of Marshall County, in granting the appellant's petition, found that it was the intent of all the parties concerned to release only Z.D. Burgett and Alabama Farm Bureau Insurance Company and that no other entity was involved in the compromise and release; that the parties executed the release on a general form although not intending a general release of all parties. The circuit court held that they intended to execute only a pro tanto release. Clearly, Alabama law provides for a pro tanto release. In Steenhuis v. Holland, 217 Ala. 105, 115 So. 2 (1926), the court construed Alabama statute § 12-21-109 as providing for the right of an injured party to accept satisfaction in part from one tortfeasor, release him, and then proceed against the other. Moreover, there need not be a reservation of a right to pursue other tortfeasors expressed in the pro tanto release. The court noted:
"`[S]uch reservation is not essential, nor need the release take the form of a covenant not to sue. The true inquiry is, did the parties intend to limit the release to the parties named, with no intent that the cause of action be satisfied in full?' [217 Ala. at 108, 115 So. at 4.]
"It is clear that under Alabama Code § 12-21-109, a release, which has as its intent the discharge from liability of only named parties to the release, need not discharge all potential parties then or later known.
"In the instant case, the appellant Mary Irvin sought relief in the appropriate state court seeking a reformation of the general release and it was granted....
"Alabama law provides that a written contract which does not express the true intentions of the parties, may be reformed only so far as it can be done without prejudice to the rights acquired by third persons in good faith and for value. Ala.Code § 8-1-2 (1975). Without questioning the good faith of appellees, it is clear that they have paid nothing by way of value for the `benefits' which they received fortuitously from the general release. ...
"...
"Our conclusion is supported by Conley v. Harry J. Whelchel Co., 410 So.2d 14 (Ala.1982), which upheld the enforcement of a general release, against the plaintiff's claim that it was only intended as a pro tanto settlement, and not a bar to any future litigation involving other unnamed defendants. However, without seeking to reform the release, the plaintiffs attempted to avoid its effect on the grounds that it did not reflect the true intention of the parties. In affirming the trial court's granting of summary judgment, the court stated that `in the absence of fraud, a release supported by valuable consideration, unambiguous in meaning, will be given effect according to the intention of the parties to be judged from the four corners of the instrument and that parol evidence is inadmissible to impeach or vary its terms.' However, the court noted that the plaintiff could have sought the remedy of reformation. The court stated:
"`The evidence ... shows that appellant could have attempted to avoid or rescind the entire release on the grounds of mutual mistake, fraud or misrepresentation. Furthermore, the appellant could have requested reformation of the release, pursuant to
*484 Code of 1975, Section 8-1-2, to express the true intention of the parties.'
"In the case at hand, the appellant[,] Mary Sue Engle Irvin, did just what the Supreme Court of Alabama suggested to be done. She petitioned for reformation of the release in the circuit court of Marshall County, Alabama, and obtained an instrument reflecting the true intention of the parties, a pro tanto release. Conley, therefore, supports the appellant's claim here."
We reject the appellants' contention that the testimony of Farm Bureau's claims agent was at least self-contradictory on the "intention of the parties" issue so as to make disposition by way of summary judgment improper. We quote the full context of this testimony from the record:
"Q Did your explain to [your insured] the release or did you just tell her that the draft [to the Hunts] wouldn't be paid until the release was signed?
"A I told her that it was a general release and the draft would clear when the release was signed.
"Q Did you explain to Mrs. Gilmore that it would release she and her husband from any further liability?
"A No, I don't think I specifically said that to her.
"Q Alabama Farm Bureau had no interest in protecting any party other than Danny and Frances Gilmore, did it?
"A No.
"Q Of course, the only responsibility Alabama Farm Bureau would have is through that of its insured, Danny and Frances Gilmore?
"MR. MUDD: I'm going to object to form.
"Q Is that correct?
"A To my knowledge, yes.
"Q Other than perhaps a thousand dollars in medical pay coverage, correct?
"MR. MUDD: I'm going to object.
"A I'm not sure I'm following your question now.
"Q Well, anyone on the premises of the Gilmores' home would be an insured under the homeowner's policy because of medical pay, would they not?
"A Yes, for the most part. I mean, as long as they are on the premises and injured while being on there with the permission of the insured.
"Q But as far as obtaining the release from Mr. and Mrs. Hunt about any claim they might have against Chilton County Hospital, Alabama Farm Bureau had no interest in that whatsoever?
"A No.
"Q Didn't care whether or not it released them or didn't release them?
"A We had no interest in Chilton County Hospital.
"Q And at the time you prepared this release, you didn't intend for the Hunts to release Chilton County Hospital, did you?
"MR. MUDD: I object to the form.
"A I really didn'tChilton County Hospital was not an issue with me. I didn't know of any suit or indemnity suit with Chilton County Hospital.
"Q When you prepared this release, you didn't intend for the Hunts to release Chilton County Hospital, did you?
"MR. MUDD: Object to the form.
"A I don't know that it was an intent on my part. I intended for it to release the Gilmores in all thejust what the release says [emphasis added].
"...
"Q Did you ever attempt to ascertain whether or not the Hunts intended to pursue a claim against Chilton County Hospital or other medical care providers for the care rendered their minor daughter?
"A No.
"Q And at the time you prepared this release, it was your intent that as far as Alabama Farm Bureau was concerned is to protect Alabama Farm Bureau and Danny and Frances Gilmore, is that correct?
"MR. MUDD: I'm going to object to the form.
"A Yes.
"Q You said yes, that was your intention at the time that release was performed, to protect Alabama Farm Bureau *485 and its insured, Frances and Danny Gilmore.
"MR. MUDD: I will again object to the form.
"A Yes.
"Q And that's all that you intended to do when you prepared that release?
"A Yes."
The appellants contend that, notwithstanding agent Hale's initial unequivocal testimony that he did not intend the release to include unnamed third parties, his statement that he "intended for it to release the Gilmores in all thejust what the release says," at the very least, makes a genuine issue of material fact that cannot be resolved on plaintiffs' motion for summary judgment. Obviously, the trial judge, reviewing the whole of the deposition before and after the "just what the release says" clause, found no contradiction in the witness's testimony.
It is readily apparent that this intelligent, articulate, and forthright witness was saying that, as the claims agent who prepared the release, he intended to have the Hunts release only his company and its insureds "in all the" respects set out in the release contract. Indeed, to interpret his testimony otherwise is to impute an intent on his part to misrepresent to the Hunts the nature and scope of the release. The trial court's reformation of the release is in full accordance with the good faith conduct of Farm Bureau's claims agent in his dealings with both the insureds and the Hunts.
Moreover, Ala.Code 1975, § 8-1-2, provides, in addition to "fraud" and "mutual mistake of the parties," that a "mistake of one party which the other at the time knew or suspected" is an alternative ground for reformation of a written contract that "does not truly express the intention of the parties." While in other contexts, the court may resort to the "mistake of one party" ground for reformation, Hale's testimony in the instant case clearly invokes the "mutual mistake" ground and leaves no genuine issue of material fact for further consideration.
Finally, appellants claim the trial court erred in considering parol evidence on the "intention of the parties" issue. We disagree. A good statement of the rule applicable to reformation is found in 66 Am.Jur.2d Reformation of Instruments § 118, p. 644-45 (1973):
"It is practically the universal rule that in suits to reform written instruments on the ground of fraud or mutual mistake, parol evidence is admissible to establish the fact of fraud or of a mistake and in what it consisted, and to show how the writing should be corrected in order to conform to the agreement or intention which the parties actually made or had. The nature of the action is such that it is outside the field of operation of the parol evidence rule, since the court does not receive parol testimony to vary the contract of the parties but to show what their contract really was. If the rule were otherwise and parol evidence was not admissible in an action for reformation, a rule adopted by the courts as a protection against fraud and false swearingthat is, the parol evidence rule would become the instrument of the very fraud it was designed to prevent, and the reformation or correction of a written instrument would rarely, if ever, be accomplished. Evidence of fraud or mistake is seldom found in the instrument itself, and unless parol evidence may be admitted for the purpose of procuring its reformation, the aggrieved party would have as little hope of redress in a court of equity as in a court of law. ..."
Also, the rule and its rationale are stated in Floyd v. Andress, 246 Ala. 301, 20 So.2d 331 (1944):
"This will not constitute a violation of the parol evidence rule because `the nature of the action is such that it is outside the operation of the parol-evidence rule.'"
246 Ala. at 306, 20 So.2d at 334-35. See, also, Hibbett Sporting Goods, Inc. v. Biernbaum, 375 So.2d 431 (Ala.1979); and Richard Kelley Chevrolet Co. v. Seibold, 363 So.2d 989 (Ala.Civ.App.1978). For two recent cases upholding pro tanto releases, see Cox v. City of Birmingham, 518 So.2d *486 1262 (Ala.1987); and Daugherty v. M-Earth of Alabama, Inc., 519 So.2d 467 (Ala.1987).
AFFIRMED.
TORBERT, C.J., and JONES, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.
HOUSTON, J., concurs specially.
HOUSTON, Justice (concurring specially).
Don Hale at one point in his deposition stated: "I don't know that it was an intent on my part [to release Chilton County Hospital]. I intended for it to release the Gilmores in all the just what the release says [emphasis supplied]." Mr. Hale's other testimony is clear that he did not intend for the release to include unnamed third parties. The release is clearly a general release that releases the Gilmores, Alabama Farm Bureau, "and all other persons, firms, or corporations liable, or who might be claimed to be liable, ... from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever and particularly on account of all injuries known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the 22nd day of March, 1983 at or near Jemison, Alabama." I have consistently held that a witness's isolated answer to a particular question, removed from the totality of that witness's testimony that explains or qualifies that answer, does not satisfy our scintilla-of-evidence sufficiency standard. See Creel v. Brown, 508 So.2d 684 (Ala. 1987) (Houston, J., concurring specially); Williams v. Robinson, 512 So.2d 58 (Ala. 1987) (Houston, J., dissenting, joined by Torbert, C.J., and Steagall, J.); and Wilson v. Alabama Power Co, 518 So.2d 105 (Ala. 1987) (Houston, J., concurring specially). To allow Mr. Hale's isolated statement, which is explained and qualified by his other deposition testimony, to provide the scintilla of evidence to defeat plaintiffs' summary judgment would be contrary to the position I have previously taken and which I am persuaded is correct. I would affirm.
By voting to affirm, I am not addressing the issue of whether there can be a pro tanto release of joint tort-feasors in wrongful death cases if only punitive damages are recoverable in such cases and if this Court continues to hold that there can be no apportionment of punitive damages against joint tort-feasors, since it is my understanding that such an issue is not raised in this appeal made final pursuant to Rule 54(b), Ala.R.Civ.P.
NOTES
[1] Because, under the allegations, the negligence of Baptist and Moore combined and concurred with the original negligence of the Gilmores to cause the death of the Hunt child, the wrongful death claim against Baptist and Moore is based on a "joint tort-feasor" theory; thus, the "individual cause of action" contention must fail. See Ex parte Rudolph, 515 So.2d 704 (Ala.1987); and Ex parte Jenkins, 510 So.2d 232 (Ala.1987).
[2] The dissent in Irvin is directed solely at the "necessary parties" issue: an issue not here presented and on which we express no opinion.