STEAGALL, Justice.
The plaintiffs, Dorosco Scarber and Jacqueline McLemore filed a complaint in the Circuit Court of Etowah County, seeking a judgment declaring the outstanding balance due on a mortgage note executed by them in February 1983.[1] The defendants, James and Frances Kelsoe, counterclaimed, requesting that the court reform the mortgage note to reflect an annual interest rate of 10 per cent. The trial court, after receiving ore tenus evidence, reformed the mortgage note so that it reflected an interest rate of 10 per cent per annum.
The record shows that in 1981 Scarber and McLemore entered into an agreement with the Kelsoes to purchase a parcel of land owned by the Kelsoes. At that time, or shortly thereafter, a note, a mortgage, and a closing statement were prepared by Bishop Walker, an attorney in Oneonta, in contemplation of closing the sale. These documents contained provisions for the payment of 10% interest yearly. The sale, however, was not consummated, because of Scarber’s lack of funds. In 1982, the parties again entered into discussions concerning the sale of the Kelsoes’ property, and in February 1983, Scarber and McLemore purchased approximately 63 acres from the Kelsoes for $50,000. Scarber and McLe-more borrowed slightly less than $20,000 from the First State Bank of Altoona to pay off a mortgage owed by the Kelsoes to *69 that bank. The Kelsoes then took a note and a second mortgage from Scarber and McLemore in the amount of $30,500, minus a credit of $7,259.82 for timber sold from the property by the Kelsoes.
Prior to the closing, First State Bank contacted William Russell, a Gadsden attorney, and requested that he examine the title and issue a title opinion with respect to the property. He was further asked to prepare the closing documents for the bank. Thereafter, Russell contacted the Kelsoes concerning the need for them to execute a deed conveying the property to Scarber and McLemore. James Kelsoe, because of poor health, requested that Russell come to his home, and Russell did. After executing the deed, James Kelsoe informed Russell that it would be necessary to prepare a second mortgage and a note in the Kelsoes’ favor. The evidence at trial showed that Russell did not take notes during this meeting at the Kelsoes’ home and did not otherwise write down any instruction given by the Kelsoes.
The Kelsoes did not attend the closing that afternoon at Russell’s office, where Scarber and McLemore signed the note and the mortgage, because they had executed the deed earlier in the day. Russell testified that it was his custom to return original documents to the persons entitled to them and that he assumed that the Kelsoes received the original note and the mortgage after they were signed by Scarber and McLemore. James Kelsoe testified that they never received the signed note, which was prepared by Russell, and, further, that he did not see a copy of the note until this action was commenced in 1990. The evidence tended to establish that the note that Russell intended to send to the Kelsoes was actually sent, along with other documents, to First State Bank. It was there that the Kelsoes located it after this action was commenced.
The dispute in this case began when, in 1990, Scarber and McLemore requested a letter from the Kelsoes stating that the payoff balance of the property was $23,-240.18. They stated that the letter was necessary because they intended to sell the property and to satisfy the Kelsoes’ mortgage. The Kelsoes refused to issue the requested letter. They argued that 10% interest was due on the principal amount from the date the mortgage was executed. The Kelsoes insisted that the principal sum of $23,240.18, plus interest in the amount of $19,470.81, was due and that the total payoff balance was thus $42,710.99.
Although the note signed by McLemore and Scarber contained no provision for the payment of interest, the trial court ruled, after hearing the testimony and reviewing the evidence, that the parties’ actual intent was to enter into an agreement whereby interest in the amount of 10% per year would be paid. The trial court then reformed the note so that the payoff balance, including principal and interest, totaled $42,710.99.
Scarber and McLemore contend on appeal that the trial court erred by considering evidence of previous transactions between the parties to support its decision to reform the note. Specifically, they argue the court erred in receiving parol evidence, documents, and correspondence relating to the unconsummated 1981 contract for the purchase of the Kelsoes’ property.
Section 8-1-2, Ala.Code 1975, provides the mechanism for reformation of a written contract:
“When, through fraud, a mutual mistake of the parties or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised by a court on the application of the party aggrieved so as to express that intention, so far as it can be done without prejudice to the rights acquired by third persons in good faith and for value.”
Further, the trial court correctly considered parol evidence as to the issue relating to the intent of the parties. This Court, in Alabama Farm Bureau Ins. Co. v. Hunt, 519 So.2d 480 (Ala.1987), stated:
“ ‘It is practically the universal rule that in suits to reform written instruments on the ground of fraud or mutual mistake, parol evidence is admissible to *70 establish the fact of fraud or of a mistake and in what it consisted, and to show how the writing should be corrected in order to conform to the agreement or intention which the parties actually made or had. The nature of the action is such that it is outside the field of operation of the parol evidence rule, since the court does not receive parol testimony to vary the contract of the parties but to show what their contract really was. If the rule were otherwise and parol evidence was not admissible in an action for reformation, a rule adopted by the courts as a protection against fraud and false swearing — that is, the parol evidence rule — would become the instrument of the very fraud it was designed to prevent, and the reformation or correction of a written instrument would rarely, if ever, be accomplished. Evidence of fraud or mistake is seldom found in the instrument itself, and unless parol evidence may be admitted for the purpose of procuring its reformation, the aggrieved party would have as little hope of redress in a court of equity as in a court of law....”’
519 So.2d at 485 (quoting 66 Am.Jur.2d Reformation of Instruments § 118, p. 644-45 (1973)). See, also, Floyd v. Andress, 246 Ala. 301, 20 So.2d 331 (1944). We further held in Ryan v. Acuff, 435 So.2d 1244, 1217 (Ala.1983):
“Trial judges have wide discretion to exclude or admit evidence even of minor probative value on issues litigated in the cases. The test is that the evidence must only shed light on the main inquiry, and not withdraw attention from the main inquiry. Cherry v. Hill, 283 Ala. 74, 214 So.2d 427 (1968); see also, C. Gamble, McElroy’s Alabama Evidence § 21.01(6) (3rd ed. 1977).”
Thus, the court correctly received into evidence the documents and correspondence at issue on appeal.
This Court, in Ex parte Geneva City Bd. of Educ., 575 So.2d 1114 (Ala.1990), restated the ore tenus standard of review:
“Under the ore tenus rule, the trial court’s findings of fact are presumed correct and its judgment based on these findings will be reversed only if it is found to be plainly and palpably wrong after a consideration of all of the evidence and all reasonable inferences that can logically be drawn from the evidence. The trial court’s judgment will be affirmed if, under any reasonable aspect of the evidence, there is credible evidence to support the judgment.”
575 So.2d at 1115-16 (citations omitted). See, also, Bankhead v. Jackson, 257 Ala. 131, 57 So.2d 609 (1952).
In the instant case, when the prior negotiations between the parties, as evidenced by their written correspondence and unconsummated contract, are viewed together with the trial testimony of the parties and witnesses, we conclude that the finder of fact had before him credible evidence that the mutual understanding of these parties at the time they entered into the contract was that interest would accrue at a rate of 10% yearly. Thus, the judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
MADDOX, ALMON, ADAMS and INGRAM, JJ., concur.

. Scarber and McLemore were married after the execution of the mortgage note.