540 So.2d 1364 (1989)
Dorothy PIERCE, as administratrix of the estate of Johnnie Pierce, deceased
v.
H. Bernie ORR.
87-160.
Supreme Court of Alabama.
February 24, 1989.
Robert T. Cunningham, Jr., and Andrew T. Citrin of Cunningham, Bounds, Yance, Crowder & Brown, Mobile, for appellant.
W. Boyd Reeves and A. Danner Frazer of Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, Mobile, for appellee.
PER CURIAM.
This is a medical malpractice case, brought pursuant to the third-party provisions of the Workmen's Compensation Act (Ala.Code 1975, § 25-5-11). The plaintiff appeals from a holding that a general release executed by her and her husband upon the settlement of the now-deceased husband's workmen's compensation claim against his employer discharged the unnamed third-party tort-feasor. We reverse.
On October 18, 1979, Johnnie Pierce suffered injuries to his back and shoulder in a job-related accident. He was treated for these injuries that afternoon by Dr. H. *1365 Bernie Orr, who diagnosed the problem as a strained neck, shoulder, and lower back and prescribed Tandearil to relieve the pain. Tandearil, a drug shown to cause aplastic anemia in elderly patients, was removed from the market by the FDA in 1980. Pierce was not informed of any risks associated with taking the drug. The injuries healed within a few days and Pierce returned to work within a week.
In March 1980, Pierce began feeling weak and developed unexplained bruises. After performing various diagnostic tests, Pierce's physician, Dr. David Clarkson, diagnosed his condition as aplastic anemia, a fatal disease. Subsequent tests confirmed this diagnosis.
At the time his disease was first diagnosed, both Pierce and Dr. Clarkson believed that his condition had resulted from his exposure to various cleaning solvents during the course of his work as a mechanic for Mobile County. The cleaning solvents in question were thought to contain benzene, a chemical known to be associated with blood abnormalities, including aplastic anemia. On the basis of this belief, Pierce and his wife, Dorothy, filed a workmen's compensation action against the Mobile County Commission and Mobile County, and a third-party action against the Safety Kleen Corporation ("Safety Kleen"), the manufacturer of the cleaning solvent believed to contain the offending chemical.
After several months of discovery, the Pierces agreed to settle their claim against Mobile County and the Mobile County Commission for $40,000. On November 17, 1980, the Mobile Circuit Court entered an "Order Approving Settlement and Petition." Several days later, without additional consideration, the Pierces executed the subject release, which was prepared on behalf of Mobile County and the Mobile County Commission, and their insurance carrier, Risk Management Services of Alabama, Inc., and which purported to release any and all persons in connection with Pierce's contraction of aplastic anemia. This executed release was not made a part of the court-approved settlement agreement.
The action against Safety Kleen remained pending until April 19, 1985, when the Mobile Circuit Court granted Safety Kleen's motion for summary judgment because extensive discovery had established that nothing in the Safety Kleen products that had been used by Pierce could have caused aplastic anemia.
Johnnie Pierce died on May 18, 1981. The connection between Pierce's aplastic anemia and Dr. Orr's brief treatment of the earlier muscle strain with Tandearil was not made until September 7, 1981, when, during Dr. Orr's deposition in the action against Safety Kleen, Mrs. Pierce learned that Dr. Orr had prescribed the drug for her husband. Further investigation revealed a strong possibility of a causal relation and, on May 18, 1983, Dorothy Pierce, as administratrix of her husband's estate, filed a malpractice action against Dr. Orr.
After more than three years of discovery, Dr. Orr filed a motion for summary judgment, contending that the release, which had been executed by the Pierces in connection with Mr. Pierce's workmen's compensation claim, also released Dr. Orr from liability for malpractice. The trial court granted this motion, and Mrs. Pierce appeals.
The sole issue presented is whether the general release, which purports to release any and all persons in connection with the employee's disability, validly discharged unnamed third-parties, where the release was not made a part of the workmen's compensation settlement agreement in the circuit court.
The trial court's reliance upon the law of Alabama with respect to general releases and upon the case of Finley v. Liberty Mutual Ins. Co., 456 So.2d 1065 (Ala.1984), is misguided in two major aspects: 1) The general rule with respect to releasing unnamed third-parties is grounded upon the concept of joint and several liability among joint tort-feasors (Baker v. Ball, 473 So.2d 1031 (Ala.1985)); and 2) the Workmen's Compensation Act mandates court approval of lump sum settlement agreements between the parties litigant. § 25-5-56 and -83.
A workmen's compensation judgment, whether the result of an agreed-upon settlement *1366 or a trial, is not a judgment against a tort-feasor and, thus, the employer's satisfaction of that judgment does not extinguish the employee's claim for damages against eligible third-parties. This is evident from the Act's own third-party provisions, § 25-5-11. By subjecting the employer to no-fault liability payments, the Act leaves the employee free to pursue any claim he may have against third-party tort-feasors. By its very terms, then, the Workmen's Compensation Act creates an exception to the general law of judgments, which provides for but a single recovery for a specific injury. Williams v. Woodman, 424 So.2d 611 (Ala.1982). To construe a general release in a workmen's compensation context according to the law of judgments would violate the express "third-party recovery" and "reimbursements" provisions of the Workmen's Compensation Act. § 25-5-11.
Another significant reason for rejecting the subject release as the basis for summary judgment is the fact that the release was not incorporated into nor referenced in the court-approved settlement agreement; such an incorporation or reference is mandated by the Workmen's Compensation Act. This point is made abundantly clear in Finley, supra. There, the terms of the release, which discharged the employer's insurer, were expressly incorporated into the final judgment approving the settlement. Based on the terms of the judgment, this Court then affirmed the trial court's rejection of the employee's subsequent third-party suit against the insurer. Here, in contrast, not only was the release not made a part of the court-approved settlement, but the workmen's compensation judgment expressly recognized the employee's right to pursue any third-party claim. Indeed, Pierce's third-party claim against Safety Kleen was pending at the time the workmen's compensation judgment was entered.
We hold, therefore, that the trial court erred in its validation of the general release insofar as it purported to release third-party tortfeasors.
Although, primarily because of the workmen's compensation context of this case, we have encountered no difficulty in resolving the issue here presented within the framework of existing law, our review has caused us to reconsider and reevaluate the broader issue of this Court's treatment of general releases. In a long line of cases, the Alabama appellate courts have upheld claims of unnamed third parties, discharging them under the terms of a general release.[1] See, for example, Baker v. Ball, 473 So.2d 1031 (Ala.1985); Johnston v. Bridges, 288 Ala. 156, 258 So.2d 866, cert. denied, 409 U.S. 847, 93 S.Ct. 52, 34 L.Ed.2d 88 (1972); Miles v. Barrett, 223 Ala. 293, 134 So. 661 (1931); and Barbour v. Poncelor, 203 Ala. 386, 83 So. 130 (1919).
Central to the rationale of these holdings is the law of judgments (the "one recovery for one injury" and the "non-apportionment of damages among joint tort-feasors" concepts). Thus, a general release, discharging any and all persons connected with the subject injury and damages, has been traditionally held to discharge from liability any and all persons without regard to whether such persons were specifically named, whether they paid any part of the consideration, or whether they had any knowledge of the instrument. Indeed, it was totally unimportant whether the executing parties even knew or had reason to know that such third-parties were in any wise involved in the subject matter of the release.
As long ago as 1852, the legislature passed what is now codified as Code 1975, § 12-21-109 (last amended in 1985), which provides:
"All receipts, releases and discharges in writing, whether of a debt of record, a contract under seal or otherwise, and all *1367 judgments entered pursuant to pro tanto settlements, must have effect according to their terms and the intentions of the parties."
Clearly, the legislative redirection was away from the law of judgments and toward the law of contracts. Curiously, the courts simply ignored the legislative will and continued to cite pre-statutory case law based upon the law of judgments.
The only detectable change in the case law came about when litigants sought the equitable relief or reformation.[2] Trial court judgments were affirmed that set aside or reformed general releases insofar as those releases declared non-contributing unnamed third-parties to be discharged from liability. See Alabama Farm Bureau Ins. Co. v. Hunt, 519 So.2d 480 (Ala. 1987).
We think the time is long past due to accept at face value the legislative will as expressed in § 12-21-109 and, thus, to give effect to contracts of release according to the intentions of the parties. Henceforth, unnamed third-parties, referred to in the release as "any and all parties" or by words of like import, who have paid no part of the consideration and who are not the agents, principals, heirs, assigns of, or who do not otherwise occupy a privity relationship with, the named payors, must bear the burden of proving by substantial evidence that they are parties intended to be released, i.e., that their release was within the contemplation of the named parties to the release. This shift in the burden of proof, of course, does not preclude unnamed third-parties from timely interposing a defense to the extent of claiming credit for any amounts paid by named parties to the release.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, ALMON, SHORES, ADAMS and KENNEDY, JJ., concur.
MADDOX, HOUSTON and STEAGALL, JJ., dissent.
HOUSTON, Justice (dissenting).
Mrs. Pierce and her decedent, Johnnie Pierce, who were represented by a lawyer, executed a release that released "any and all persons, firms, and corporations" from "any and all claims ... arising from, resulting from, or in any manner growing out of or incidental to the contraction on or about March of 1980 by Johnnie Pierce of the disease of aplastic anemia." This Court has construed similar language in other releases and has concluded that the language is unambiguous. Baker v. Ball, 473 So.2d 1031, 1035 (Ala.1985); Finley v. Liberty Mutual Insurance Co., 456 So.2d 1065, 1067 (Ala.1984); Conley v. Harry J. Whelchel Co., 410 So.2d 14, 15 (Ala.1982).
Mrs. Pierce, who had executed the release, became the personal representative of Mr. Pierce, who also had executed the release; as personal representative, she brought this wrongful death medical malpractice action against Dr. Orr for negligently prescribing a drug that proximately caused Mr. Pierce to develop aplastic anemia, without informing Mr. Pierce of the risk connected with the use of the drug, i.e., the risk of aplastic anemia. Clearly, Dr. Orr was a "person" who was sued for a claim "arising from, resulting from, ... growing out of, or incidental to the contraction... of aplastic anemia" by Mr. Pierce, and, consequently, Dr. Orr was released, for his action took place prior to Mr. Pierce's contracting aplastic anemia and prior to Mr. and Mrs. Pierce's executing the release.
The trial court did not err in granting Dr. Orr's motion for summary judgment.
MADDOX and STEAGALL, JJ., concur.
NOTES
[1] The Court has recognized, of course, the right of the injured party to accept satisfaction in part from one tort-feasor, release him, and proceed against the other. (See cases annotated under § 12-21-109. See, also, American Pioneer Life Ins. Co. v. Sandlin, 470 So.2d 657 (Ala.1985), and the cases cited therein.) The problem arises where the release does not, by its express terms, reflect that the consideration is accepted as partial satisfaction and does not expressly reserve the injured party's right to proceed against other joint tort-feasors, but purports to release "any and all persons."
[2] This is not to say that the Court did not also recognize the third-party's right to plead, when timely interposed, the amount of the settlement as shown in the release, even in those cases where the express language in the release reserved the injured party's right to proceed against other joint tort-feasors. See Wylam Ice Co. v. King, 293 Ala. 359, 304 So.2d 1 (1974).