Thomas and Ann Eiland brought an action against C.A. Kelly, Kelly Builders, Inc., and C.A. Kelly Company, alleging fraud, conspiracy to defraud, negligence, and breach of an implied warranty of habitability. The Eilands also named as defendants the City of Mobile and Illinois Central Gulf Railroad. Mary Frances Alexander also brought an action against C.A. Kelly, Kelly Builders, Inc., C.A. Kelly Company, Nabiha Land Company (hereinafter referred to collectively as "Kelly"), the City of Mobile, and Illinois Central Gulf Railroad, alleging fraud, conspiracy to defraud, breach of an implied warranty of habitability, negligence, and willful and *Page 344 
wanton conduct. The claims against the City of Mobile and Illinois Central Gulf were dismissed, and the two cases were consolidated for trial. The jury returned a verdict in favor of the Eilands in the amount of $152,175 and in favor of Alexander in the amount of $100,525. The trial court entered judgment on the verdicts and subsequently denied Kelly's motions for J.N.O.V. or in the alternative for new trial.
In 1969, Nabiha Land Company, Inc., purchased from the City of Mobile certain real property that adjoined Three Mile Creek. In 1974 Nabiha filed in the probate office a resubdivision of the property. Before the City would approve the resubdivision and issue building permits, it required Nabiha to enter into a hold harmless agreement with the City, because the property was "subject to and [would] probably become inundated with water."
The property was transferred from Nabiha to C.A. Kelly 
Company, and on January 14, 1975, Kelly sold a lot and a house he had constructed on that lot in the subdivision to Mrs. Alexander and her husband, who has since died. On April 8, 1976, a similar transaction was entered into between Kelly and the Eilands. Prior to the sales, Kelly allegedly told both the Eilands and the Alexanders that the property would not flood and that there was no reason to be alarmed or concerned about the possibility of flooding. On May 5, 1981, Three Mile Creek flooded, causing damage to the Eiland and Alexander homes. The Eilands filed suit on July 6, 1981, and Mrs. Alexander filed suit on May 4, 1982.
Kelly first argues that Mrs. Alexander's fraud and conspiracy to defraud claims are barred by the statute of limitations. The claims were governed by Ala. Code 1975, § 6-2-39(a)(5), which required that fraud actions be commenced within one year of the accrual of the cause of action.[1]
Also applicable to the fraud claim is Ala. Code, § 6-2-3, which, prior to its 1985 amendment, provided:
 "In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have one year within which to prosecute his action."[2]
Facts constituting fraud are considered to have been discovered when they ought to have been discovered through reasonable diligence. See Davis v. Brown, 513 So.2d 1001 (Ala. 1987); Geansv. McCaig, 512 So.2d 1308 (Ala. 1987); Boros v. Palmer,472 So.2d 1020 (Ala. 1985). This Court has held that "Facts which provoke inquiry in the mind of a man of reasonable prudence, and which, when followed up, would have led to a discovery of the fraud, constitute sufficient evidence of discovery."Willcutt v. Union Oil Co. of California, 432 So.2d 1217,1219-20 (Ala. 1983); Johnson v. Shenandoah Life Ins. Co.,291 Ala. 389, 397, 281 So.2d 636 (1973); Butler v. Guaranty Savings Loan Ass'n, 251 Ala. 449, 37 So.2d 638 (1948). The question thus becomes: When should Mrs. Alexander have discovered the fraud?
The record shows that on April 13, 1980, Mobile experienced near record rainfall and that the Eilands' home and Mrs. Alexander's lot were flooded by Three Mile Creek. Kelly contends that the statute of limitations began to run at this time. We agree. The April 1980 flood was of such magnitude that it would have provoked a person of reasonable prudence to inquire as to whether Kelly knew that the property was subject to flooding. As of that date, Mrs. Alexander knew or should have known that Kelly's representations that the property would not flood were false. We hold that the statute of limitations for the fraud claim began to run on that date. Because the conspiracy to defraud claim is dependent upon the underlying fraud, the statute of limitations on that claim began to run at the same time as did the statute for the underlying fraud claim. Mrs. Alexander's action was filed more than one year *Page 345 
after the April 1980 flood. We hold that the trial court erred in denying Kelly's motion for J.N.O.V. on the fraud and conspiracy to defraud claims.
Kelly next argues that Mrs. Alexander's claim for breach of implied warranty of habitability was barred by the statute of limitations. We agree.
The statute of limitations for breach of implied warranty of habitability is six years. Ala. Code 1975, § 6-2-34. In Stephensv. Creel, 429 So.2d 278 (Ala. 1983), this Court held that "in a contract action based upon a warranty to construct a house in a workmanlike manner, the cause of action accrues and the statute of limitations begins to run on the date the defendant completes performance." 429 So.2d at 280. The house was completed before Mrs. Alexander and her husband purchased the property in January 1975. This claim was filed on May 4, 1982, more than six years later. We hold that Mrs. Alexander's claim was barred by the statute of limitations and that the trial court erred in denying Kelly's motion for J.N.O.V. as to her claim for breach of implied warranty of habitability.
It is equally clear that Mrs. Alexander's claims for negligence and willful and wanton conduct were not timely filed. We hold that the trial court erred in denying Kelly's motion for J.N.O.V. on Mrs. Alexander's negligence and willful and wanton conduct claims.
The Kelly defendants next argue that the trial court erred in denying their motion for J.N.O.V. on the Eilands' claims on the grounds that the Eilands had released them from liability. On July 19, 1985, the Eilands executed a warranty deed and a document entitled "Release for Real Property Damage." The deed conveyed the Eilands' property to the City and the release discharged the City of its liability to the Eilands for damage to their property. The Kelly defendants contend that the release also discharged them from liability. We agree.
The release contained the following language:
 "For and in consideration of the payment to us of the sum of sixty-three thousand two hundred dollars, the receipt of which is hereby acknowledged, we, for ourselves, our heirs and personal representatives, do release, acquit and forever discharge the City of Mobile; all agents, employees or representatives of the City of Mobile; and Home Indemnity Company, its and their heirs, personal representatives and successors and also any other persons, partnerships, firm[s] or corporation[s] charged or chargeable with responsibility or liability arising from all acts, omissions or occurrences hereinafter referred to and his, her, its and their heirs, personal representatives, successors and assigns, from any and all claims, demands, costs, expenses, actions and causes of action which we now have or may hereinafter have for all real property damage, arising from any act, omission, or occurrence happening at any time prior to the date of this instrument, and specifically including, but not being limited to, any and all claims, demands, damages, costs, expenses, actions and causes of action, which we now or may hereinafter have for all real property damage arising as a result of those incidents more specifically described in the complaint filed by Thomas and Ann Eiland in the Circuit Court of Mobile County, Alabama, being Civil Action No. CV-81-001552, including but not limited to the alleged flooding of the plaintiffs' real property at 3515 Springwood Dr. E., Mobile, Alabama, around April 13, 1980; and/or around May 16 and 17, 1980; and/or around May 5 and 6, 1981."
Alabama law is clear that by executing a general release, like the one signed by the Eilands, a party releases all tort-feasors against whom a cause of action is not specifically reserved, regardless of whether those tort-feasors are parties to the release or are expressly mentioned therein. Baker v.Ball, 473 So.2d 1031 (Ala. 1985); Johnston v. Bridges, 288 Ala. 156, 258 So.2d 866, cert. denied, 409 U.S. 847, 93 S.Ct. 52,34 L.Ed.2d 88 (1972). As this Court has previously stated:
 "In the absence of fraud, a release supported by a valuable consideration, unambiguous in meaning, will be given effect according to the intention of the *Page 346 
parties to be judged by the court from what appears within the four corners of the instrument itself, and parol evidence is not admissible to impeach it or vary its terms. Miles v. Barrett, 223 Ala. 293, 134 So. 661 (1931)."
Baker, supra, at 1035.
There is no doubt that the release of Kelly was supported by $63,200 as consideration, regardless of the fact that the City of Mobile, not Kelly, actually paid it.
 "Consideration for a release moving from a third person on behalf of the releasee to the releasor . . . is as adequate as a consideration moving directly from the releasee to the releasor. Bridges, supra, 288 Ala. at 162, 258 So.2d at 872."
Id.
We hold that the trial court erred in denying Kelly's motion for J.N.O.V. on the Eilands' claims.
In each case, the judgment is reversed and a judgment is rendered for the defendants.
REVERSED AND JUDGMENTS RENDERED.
HORNSBY, C.J., and MADDOX, ADAMS and STEAGALL, JJ., concur.
[1] Now 2 years. 1984-85 Ala. Acts, No. 85-39, p. 40, 2d Special Session 1984-85. See also Ala. Code 1975, § 6-2-39(a)(5) (repealed by Act 85-39) and § 6-2-38(l) (amended by Act 85-39).
[2] Now 2 years. 1984-85 Ala. Acts, No. 85-39, p. 40, 2d Special Session 1984-85.