Plaintiff Nix appeals from a summary judgment in favor of defendant Henry C. Beck Company ("Beck") on Nix's claim of negligence. We affirm.
The facts in this case are not disputed. On January 27, 1966, Bel Air Corporation and Beck contracted for the construction of the Bel Air Mall in Mobile, Alabama, at the time the biggest shopping mall in Alabama. Pursuant to the contract, Beck was to install an automatic fire sprinkler system in the Mall. The Mall was completed in 1967. Problems with the sprinkler system arose and on February 5, 1973, Bel Air Corporation sued Beck, alleging a breach of contract and a failure to provide labor, materials, equipment and services necessary to install the sprinkler system correctly. Bel Air claimed $10,000 in damages, but the parties reached a settlement and signed the following release:
 "KNOW ALL MEN BY THESE PRESENTS that BEL AIR CORPORATION, an Alabama Corporation, its successors and assigns, for and in consideration of the sum of TWO THOUSAND ($2,000.00) DOLLARS to it in hand paid by, the receipt of which is hereby acknowledged, does hereby release and discharge HENRY C. BECK COMPANY, a Delaware Corporation, its successors and assigns, from any and all manner of claims, demands, damages, causes of action or suits that it might now have or that might subsequently accrue to it by reason of any matter or thing whatsoever, and particularly growing out of or in anywise connected with directly or indirectly, that certain contract entered into on or about the 27th day of January, 1966, between Bel Air Corporation, an Alabama Corporation, and Henry C. Beck Company, a Delaware Corporation, entitled Construction Contract, and particularly and especially on account of the matters and things set forth and alleged in the complaint in that certain suit entitled Bel Air Corporation, a Corporation vs. Henry C. Beck Company, a Corporation, the same being numbered 40810 of the causes pending in the Circuit Court of Mobile County, Alabama, to which said complaint reference is hereby made for greater certainty.
 "It is the purpose of this release to forever settle, adjust and discharge all claims of whatsoever kind or nature that the undersigned has or may have against the party heretofore mentioned, and it is agreed that the said lawsuit pending in the Circuit Court of Mobile County, Alabama, be dismissed with prejudice with the plaintiff, Bel Air Corporation, to pay the costs of court."
(C.R. 261-62.)
In February 1986, Bel Air Corporation discovered that Beck had used material containing asbestos as fireproofing during the original construction. Bel Air Corporation was negotiating a sale of the Mall at the time of this discovery, but the asbestos material had to be removed before a sale could take place and the Mall could be rendered safe for public use; the cost of the removal was approximately $1.5 million. The present action was filed on December 17, 1987, *Page 1216 
and the trial court entered summary judgment for Beck on March 20, 1990, holding that the 1973 release barred this action.
Whether a release is ambiguous is a question of law for the trial court. Regional Health Services, Inc. v. Hale CountyHospital Board, 565 So.2d 109, 112 (Ala. 1990), citing BrownMechanical Contractors, Inc. v. Centennial Insurance Co.,431 So.2d 932 (Ala. 1983). In determining if the language of the release is unambiguous, a court must give the words of the release their ordinary meaning, Regional Health Services, Inc., supra, citing Food Services Distributors, Inc. v. Barber,429 So.2d 1025 (Ala. 1983), and the release must be given effect "according to its terms and the intentions of the parties thereto." Ala. Code 1975, § 12-21-109. The language used in the 1973 release is comprehensive concerning the claims sought to be released. Specifically, the release states:
 "BEL AIR CORPORATION . . . does hereby release and discharge Henry C. Beck Company . . . from any and all manner of claims, demands, damages, causes of action or suits that it might now have or that might subsequently accrue to it by reason of any matter or thing whatsoever. . . .
 "It is the purpose of this release to forever settle, adjust and discharge all claims of whatsoever kind or nature . . ."
(Emphasis added.) The language is clear and unambiguous. We must assume that the intent was to prevent the parties from asserting any claim or claims that might arise out of the January 27, 1966, contract. The release specifically refers to "the matters and things set forth and alleged in the complaint in that certain suit entitled Bel Air Corporation, a Corporation vs. Henry C. Beck Company, a Corporation," and states that one of the purposes of the release was to settle the then-pending lawsuit. Nevertheless, the following language from Alabama Power Co. v. Blount Brothers Corp., 445 So.2d 250
(Ala. 1984), is applicable in this case:
 "It is evident from [the] language that the whole point of the release was to preclude the parties from making any claims out of the contractual relationship. . . . The quoted language reflects the express intention of two sophisticated parties to 'forever' put to rest 'any' claims 'involving in any way' the construction of Walter Bouldin Dam."
Id., at 252. The release in Alabama Power Co. contained the following language:
 "(b) Alabama Power Company, its successors or assigns, does hereby release and forever discharge Blount Construction Company, its successors or assigns, of and from any claim, demand or demands, damages, action or actions, cause or causes of action which Alabama Power Company might have or could maintain by reason of any of the matters or things done or suffered to be done, or omitted or suffered to be omitted to be done, and involving in any way Contract No. J22-8 and Jordan Dam No. 2 Development."
Id. at 251. The similarity of the language used in the release in this case compels a similar conclusion.
Nix argues that the release in question was intended to release Beck only from contract-related claims. We note the following language in Regional Health Services, Inc.; "With a general release, the parties obviously intended to release all claims — contract claims as well as tort claims. . . . If the parties had wanted to limit the release, they could have expressly reserved and excepted certain claims, including tort claims." 565 So.2d at 114. The release between Bel Air and Beck was a general release and could have been limited if the parties so desired.[1]
The release pleaded in defense of this litigation was executed by the same parties who had settled a prior claim by executing this release. Thus, the question is: Did *Page 1217 
these two parties intend to release all claims between them growing out of the construction of Bel Air Mall? The issue inPierce v. Orr, 540 So.2d 1364, which discusses the construction of releases, was whether the parties to the release were to be held to have released all claims between the parties named in the release plus potential claims against third parties who were, or may have been, unknown at the time of the execution of the release. We held in Pierce that contracts of release are to be governed by the principle expressed in Ala. Code 1975, §12-21-109 — i.e., that they are to be given effect "according to the intentions of the parties." 540 So.2d at 1367. If the express provisions of a release are unambiguous, then, in accordance with contract principles generally, they will be taken as expressing the intent of the parties. If the terms of the release are ambiguous, then the intention of the parties is to be determined as a question of fact, and parol evidence is admissible on that question.
In opposition to Beck's motion for summary judgment, Nix filed an affidavit by the attorney who represented Bel Air Corporation in its 1966 action against Beck, and in that affidavit he stated that the release was not intended to be a bar against future tort claims relating to asbestos removal. InAlabama Power Co. we stated:
 "It is axiomatic that parol evidence offered in opposition to a motion for summary judgment may not vary the terms of a writing. . . .
 " 'Under Rule 56(e) [A.R.Civ.P.], an opposing affidavit must be made on personal knowledge, and must set forth facts as would be admissible in evidence.' Because [the] affidavits both sought to establish facts not admissible as evidence, they were properly excluded."
445 So.2d at 253 (citation omitted) (emphasis added inAlabama Power Co.).
The affidavit was an attempt to vary the unambiguous terms of the release and was therefore not admissible.
Because solely a question of law was presented, the case was appropriate for summary judgment, and because the trial court decided the legal question correctly, its judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, HOUSTON and KENNEDY, JJ., concur.
[1] The holding of this case, as it relates to the release of "claims," should be distinguished from holdings regarding releases that refer to "any and all persons," e.g., Pierce v.Orr, 540 So.2d 1364 (Ala. 1989).