Ford Motor Company (hereinafter "Ford") appeals from a judgment reforming a general release signed by Jimmy Sue Neese, as administratrix of the estate of James M. Neese, into a pro tanto release. We affirm.
In December 1986, an automobile driven by Danny Ray Smith struck an automobile driven by Gregory Fowler and owned by Carolyn Fowler Odom. Ms. Odom and James M. Neese, passengers in the car driven by Fowler, were killed. Both cars were insured by State Farm Mutual Automobile Insurance Company (hereinafter "State Farm"). Charles Mann, a State Farm claims representative, contacted Jimmy Sue Neese, James M. Neese's daughter, concerning the payment of Mr. Neese's funeral expenses. Ms. Neese retained counsel to assist her in obtaining letters of administration and, eventually, to negotiate a settlement with State Farm. A settlement of $25,000 was agreed upon, and in return Ms. Neese signed the following release:
 "For the sole consideration of twenty-five thousand and 00/100 Dollars, the receipt and sufficiency whereof is hereby acknowledged, the undersigned hereby *Page 1256 
releases and forever discharges Gregory Fowler, The Caroline Fowler Odom Estate and Danny Ray Smith, [their] heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable or who might be claimed to be liable, none of whom admit any liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to persons and property, which have resulted or may in the future develop from an accident which occurred on or about the 28[th] day of December 1986 at or near Andalusia, AL.
 "Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.
 "Undersigned hereby accepts draft or drafts as final payment of the consideration set forth above."
Ms. Neese retained new counsel, and on December 28, 1988, filed a products liability action against Ford. The present action was filed on January 3, 1989, seeking reformation of the release so that only State Farm, the individuals specifically listed in the release, and their heirs, executors, administrators, agents, and assigns, would be released. A hearing was held on November 20, 1989, and on November 28, 1989, the trial court issued its order, reforming the release
 "so as to reflect that it is a pro tanto release and cannot be pleaded as a bar to the suit by Jimmy Sue Neese against Ford Motor Company unless Ford Motor Company can prove that State Farm Mutual Automobile Insurance Company had agreed to indemnify Ford Motor Company for any loss it sustained by reason of a suit based upon the crashworthiness of Ford Motor vehicles." (R. 30.)
In Pierce v. Orr, 540 So.2d 1364 (Ala. 1989), this Court reconsidered and reevaluated its treatment of general releases. Prior to Pierce, the appellate courts of Alabama had upheld the claims of unnamed third parties and summarily discharged them under the terms of a general release;[1] yet Alabama Code 1975, §12-21-109, mandated the following:
 "All receipts, releases and discharges in writing, whether of a debt of record, a contract under seal or otherwise, and all judgments entered pursuant to pro tanto settlements, must have effect according to their terms and the intentions of the parties thereto." (Code 1852, § 2282; Code 1867, § 2685; Code 1876, § 3039; Code 1886, § 2774; Code 1896, § 1805; Code 1907, § 3973; Code 1923, § 7669; Code 1940, T. 7, § 381; Acts 1985, No. 85-517, p. 611.)
The expression of the legislative will that both the terms of a release and the intentions of the parties must be considered in determining the effect of the release had been longstanding,[2] but simply ignored by the courts prior to Pierce, except with regard to reformation, in which regard the courts made a notable exception. Trial court judgments that either set aside or reformed general releases, insofar as those releases declared noncontributing unnamed third parties to be discharged from liability, were affirmed. See Alabama Farm Bureau Ins. Co.v. Hunt, 519 So.2d 480 (Ala. 1987). In Pierce, this Court decided to "accept at face value" the legislative will articulated in § 12-21-109, and held:
 "Henceforth, unnamed third parties, referred to in the release as 'any and all *Page 1257 
parties' or by words of like import, who have paid no part of the consideration and who are not the agents, principals, heirs, assigns of, or who do not otherwise occupy a privity relationship with, the named payors, must bear the burden of proving by substantial evidence that they are parties intended to be released, i.e., that their release was within the contemplation of the named parties to the release."
Pierce, 540 So.2d at 1367.
We acknowledge that the Court, in Kelly v. Alexander,554 So.2d 343 (Ala. 1989), which was decided two months afterPierce v. Orr, 540 So.2d 1364 (Ala. 1989), reached a result different from that reached in Pierce v. Orr and the result we reach today.[3] We reaffirm the holding in Pierce v. Orr, because we believe it is mandated by a fair reading of the legislative will as expressed in § 12-21-109, Ala. Code 1975. To the extent that Kelly v. Alexander, supra, is contrary to the holding inPierce v. Orr, it is expressly overruled.
Ford must prove by substantial evidence[4] that it was a party intended to be released by the general release between Ms. Neese and State Farm, unless Ford paid some part of the consideration for the release and is an agent, principal, heir of, assign of, or otherwise occupies a privity relationship with, the named payor. In its order, the trial court stated certain findings of fact: 1) that Ford was not a named party in the release; 2) that Ford was not a contributing party to the release; 3) that State Farm insured both drivers involved in the collision; 4) that the suit brought by Ms. Neese against Ford, based upon a crashworthy vehicle theory, was not within the contemplation of any of the parties at the time the release was executed; 5) that it was State Farm's intent to settle the case only as it related to any State Farm insured; and 6) that the vehicle's crashworthiness was not considered, and neither was the issue of liability. It is well established that this Court can not overturn a finding of fact made by a lower court that is supported by the evidence and that is not plainly and palpably wrong; such a finding carries a presumption of correctness, even though there may be conflicting evidence.Kershaw v. Knox Kershaw, Inc., 523 So.2d 351, 365 (Ala. 1988). A careful review of the record indicates that the trial court's findings of fact are supported by the evidence and are not plainly and palpably wrong, so they carry with them the presumption of correctness. Ford must, by substantial evidence, prove that it was a party intended to be released.
Ford argues that the trial court's use of parol evidence was incorrect because, it argues, the intentions of Ms. Neese and State Farm concerning the parties to be released must be determined from the unambiguous terms of the release itself. InAlabama Farm Bureau Ins. Co. v. Hunt, 519 So.2d 480 (Ala. 1987), we addressed the use of parol evidence in determining the intention of the parties to a release:
 "It is practically the universal rule that in suits to reform written instruments on the ground of fraud or mutual mistake, parol evidence is admissible to establish the fact of fraud or of a mistake and in what it consisted, and to show how the writing should be corrected in order to conform to the agreement or intention which the parties actually made or had. The nature of the action is such that it is outside the field of operation of the parol evidence rule, since the court does not receive parol testimony to vary the contract of the parties but to show what their contract really was. If the rule were otherwise and parol evidence was not admissible in an action for reformation, a rule adopted by the courts as a protection against fraud and false swearing — that is, the parol evidence rule — *Page 1258 
would become the instrument of the very fraud it was designed to prevent, and the reformation or correction of a written instrument would rarely, if ever, be accomplished. Evidence of fraud or mistake is seldom found in the instrument itself, and unless parol evidence may be admitted for the purpose of procuring its reformation, the aggrieved party would have as little hope of redress in a court of equity as in a court of law."
Hunt, 519 So.2d at 485, citing Reformation of Instruments, 66 Am.Jur.2d § 118, pp. 644-45 (1973). Thus, the trial court's use of parol evidence was not error.
Ford also argues that Ms. Neese presented no evidence that established an entitlement to reformation of the release. Specifically, Ford claims that Ms. Neese did not prove: 1) a mutual mistake between State Farm and herself concerning the scope of the release; or 2) a unilateral mistake, either on State Farm's part or hers, of which the other party knew or suspected at the time the release was signed. See Ala. Code 1975, § 8-1-2. In support of the contention that there was no mutual mistake, Ford points to a portion of Charles Mann's testimony:
 "Q. . . . [T]he intent of the document, number one, from State Farm's standpoint, is not simply to limit the document to even State Farm; is that a correct statement of your understanding of the intent of this document?
"[Objection and ruling omitted.]
 "A. It is a general release and it releases anybody that could come up.
"Q. That is or may be liable?
"A. Right.
 "Q. Regardless of whether they are insured by State Farm or not, is that a correct statement?
"A. Yes, sir.
"Q. There is no mistake about that?
"A. No, sir."
(R.T. 44. Emphasis added.) Mann also stated that it was the intent of State Farm in preparing the release, to "protect our [State Farm's] insured" (R.T. 45) and that Ford never was intended to be released (R.T. 46.) Further, Ms. Neese testified that she never discussed the terms of the release with Mr. Mann or with any other State Farm personnel, that she understood the release to cover those individuals named and State Farm, and that it was never her intent to release any parties except those named in the release itself. (R.T. 8-12.) Ms. Neese's attorney testified that he told Neese that the only persons being released from liability in the release were those specifically named and State Farm; no other parties were discussed. (R.T. 26-27.)
From the evidence the trial court could reasonably conclude that both Ms. Neese and her attorney intended only State Farm and those individuals specifically mentioned in the release to be relieved of liability. The same can also be said of State Farm, even in the face of Mr. Mann's conflicting testimony.Kershaw, supra. Thus, the trial court could reasonably conclude that there existed a mutual mistake between the parties in that the release did not adequately reflect their true intentions. Reformation of the release to reflect the parties' true intentions would be allowable.
In light of the testimony presented, the trial court could find that State Farm's intent was to settle the case only as it pertained to any party insured by State Farm. Thus, the reformation of the release was not error. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, ALMON, ADAMS and KENNEDY, JJ., concur.
MADDOX, HOUSTON and STEAGALL, JJ., dissent, with opinion by HOUSTON, J.
[1] See, Baker v. Ball, 473 So.2d 1031 (Ala. 1985); Johnston v.Bridges, 288 Ala. 156, 258 So.2d 866, cert. denied,409 U.S. 847, 93 S.Ct. 52, 34 L.Ed.2d 88 (1972); Miles v. Barrett,223 Ala. 293, 134 So. 661 (1931); and Barbour v. Poncelor, 203 Ala. 386,83 So. 130 (1919).
[2] What today is § 12-21-109 has been in existence, in some form, since 1852.
[3] The inconsistency between Pierce and Kelly was not argued in the Kelly v. Alexander application for rehearing.
[4] Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved. West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989).