The plaintiff, William Green, appeals from a summary judgment in favor of Wedowee Hospital ("Wedowee") and Surgidev Corporation.[1] We reverse and remand.
On December 21, 1985, Dr. Theodore A. Torsch performed cataract surgery on Green. Although he was scheduled to replace the lens in Green's right eye, Dr. Torsch performed the surgery on the left eye, leaving Green virtually blind. Green and his wife sued Dr. Torsch, alleging medical malpractice; on October 16, 1989, *Page 1311 
they settled the case for $500,000 and executed a release effectuating the settlement. (At the time of the settlement, Dr. Torsch had died, so St. Paul Fire Marine Insurance Company ("St. Paul"), his medical malpractice insurance carrier, effectuated the settlement on behalf of the estate of Dr. Torsch.) On October 6, 1989, 10 days prior to settling the medical malpractice suit and signing the release, Green sued Wedowee and Surgidev for damages based on fraud and outrageous conduct,[2] alleging that Wedowee had committed fraud by failing to obtain Federal Drug Administration ("FDA") approval to conduct the experimental lens implantation on Green and by failing to inform Green of the experimental nature of the surgery and of its failure to obtain such FDA approval; that Wedowee was guilty of outrageous conduct for falsifying FDA documents in order to qualify for the experimental lens surgery and for failing to obtain Green's informed consent; and that Surgidev, through its alleged agent, Dr. Torsch, fraudulently suppressed material facts from Green when Dr. Torsch implanted an experimental lens in Green's eye without disclosing the experimental nature of the surgery. Wedowee and Surgidev filed motions for summary judgment,[3] raising the defenses of res judicata, the statute of limitations, and general release. Green filed an affidavit in opposition to the motion, stating that it was not until the deposition of Wedowee's administrator for purposes of Green's medical malpractice suit against Dr. Torsch that he discovered the experimental nature of the surgery. The trial court entered summary judgment as "to all defendants,"[4] based upon what it determined to be insufficient facts offered in opposition to the motion for summary judgment (which had been based upon the previous release, the claim that the statutory period of limitations had run, and res judicata. Green appeals. We reverse and remand.
 Statute of Limitations
Green contends that he did not learn of the alleged fraud, until April 1989 (when, he says, during the deposition of Kurlene Mitchell, Wedowee's administrator, in connection with Green's malpractice suit against Dr. Torsch, he became aware that Wedowee allegedly had allowed Dr. Torsch to perform "experimental" cataract surgery) and, therefore, that his claim was not barred by the applicable statute of limitations.
Wedowee contends that Green did not present any facts indicating why he could not have discovered the alleged fraud within two years from the time of the cataract surgery on December 21, 1985 — that Green's only evidence in opposition to its summary judgment motion was a one-page handwritten affidavit that he filed the day of the hearing on that motion, which affidavit stated that he did not know until April 1989 that the lens was experimental.
The trial court found Green's affidavit insufficient to defeat Wedowee's motion for summary judgment: *Page 1312 
 "[Green's] affidavit [in opposition to Wedowee's motion for summary judgment] stated in substance that [Green] did not learn of his alleged cause of action until April 20, 1989, when his lawyer told him about certain facts discovered . . . in the suit then pending . . . against Dr. Torsch's estate. However, the affidavit and the record are silent as to when [Green's] attorney
first learned of such facts. It is therefore insufficient to create a factual issue as to the tolling or savings provisions of the statute of limitations on fraud and/or medical malpractice.
 "[Green's] affidavit did not show any specific facts as to why the alleged fraudulent concealment could not have been discovered within 2 years after his December 21, 1985, operation, nor did it state what due diligence [Green] had used after the operation to discover whether he had a cause of action against [Wedowee]."
(Emphasis in original.) (Citations omitted.)
In Alabama, pursuant to Ala. Code 1975, § 6-2-38, an action for fraud is subject to a two-year statute of limitations. However, since its inception, Ala. Code 1975, § 6-2-3 ("the saving provision"), has extended the time period for a right of action until either the party discovered or should have discovered the fraud:
 "In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute the action."
If it appears that the statutory period has expired, then the burden is on the party bringing the fraud action to show that he comes within the purview of this provision. See Hicks v.Globe Life Accident Insurance Co., 584 So.2d 458 (Ala. 1991). In Hicks (and the cases cited therein), this Court reiterated the objective standard for determining when a party should have "discovered" fraud for the purpose of the statute of limitations, emphasizing that "the mere fact that the standard is an objective one does not foreclose a jury determination on the issue." Rather, as this Court stated in Hicks, quotingThompson v. National Health Ins. Co., 549 So.2d 12, 14
(Ala. 1989) (quoting Vandegrift v. Lagrone, 477 So.2d 292, 295
(Ala. 1985)):
 "The law in Alabama has long been that '[t]he question of when a party discovered or should have discovered fraud which would toll the statute of limitations is for the jury.'
 "The question of when a plaintiff should have discovered fraud should only be taken away from the jury and decided as a matter of law in cases in which the plaintiff actually knew of facts which would put a reasonable person on notice of fraud.
 "To hold otherwise would be to nullify the saving provision of Ala. Code 1975, § 6-2-3 . . . ."
(Citations omitted.) (Emphasis in original and added.)
We have reviewed the record thoroughly and have found no evidence in this case that Green had "actual" knowledge of the alleged fraud before deposing Wedowee's administrator for purposes of prosecuting Green's medical malpractice suit against Dr. Torsch. Thus, the jury could have concluded that Green acted reasonably in not discovering the alleged fraud until that time. Therefore, the question of when Green should have discovered the fraud so as to begin the running of the statutory period of limitations should be decided by a jury. Accordingly, the trial court could not properly have based its summary judgment on the statute of limitations.
 General Release
As to the issue of the effect of the release on Wedowee, the trial court found as follows:
 "2. This suit is Barred by a Previous Release: In a previous lawsuit . . . [Green] executed a 'release and indemnification agreement,' in consideration of $500,000.00 paid to him by [St. Paul] on behalf of the estate of Dr. Theodore *Page 1313 
Torsch. A copy of this release was attached to [Wedowee's] motion for summary judgment, and the authenticity of it was not disputed by [Green]. The Court has examined this release, and finds that it has the effect of a general release in full settlement of all claims arising from Dr. Torsch's alleged negligent operation on [Green] at [Wedowee] on December 21, 1985. In other words, the release executed by [Green] . . . was a general release which settled his entire lawsuit as to all claims. This is evident from the following portions of the release:
 " 'That we, [Green] . . ., for the sole consideration of Five Hundred Thousand Dollars ($500,000.00) . . . do . . . release and forever discharge [St. Paul on behalf of the Estate of Dr. Torsch, deceased, his widow and children] . . . for all damages . . . for or because of any matter or thing done . . . by anyone prior to and including the date hereof . . .
 " '. . . [W]e further understand that this release is made as a compromise to avoid expense and to terminate all controversy and/or claims for injuries or damages of whatsoever nature, . . . in any way growing out of or connected with the aforesaid incident. . . .
 " '. . . [It] is therefore specifically agreed that this release shall be a complete bar to all claims or suits for injuries or damages of whatsoever nature . . . [and] in further consideration for the above payment, the undersigned agrees to protect [St. Paul on behalf of the Estate of Dr. Torsch, deceased, his widow and children] against any claims for damages, compensation or otherwise in the part of any party, including but not limited to [Wedowee] . . . growing out of or resulting from alleged injuries to anyone in connection with the above mentioned medical treatment rendered to [Green]. . . .'
 "It is clear from this release that [Green] intended to settle all claims, including any [he] might have against [Wedowee] . . . and that [he] did not reserve any rights to pursue [Wedowee] or otherwise attempt a pro tanto settlement. In fact, the indemnification provisions make it clear that [Green] intended to release all causes of action arising from Dr. Torsch's alleged wrongful conduct, especially where there was but one operation and one alleged negligent act. Dr. Torsch was the party whose alleged negligence in the operation caused [Green's] injuries and damages, but [Green] released Dr. Torsch and his estate as to all claims without reserving any causes of action against any other persons."
(Emphasis added by trial court.)
In Ford Motor Co. v. Neese, 572 So.2d 1255 (Ala. 1990), "believe[ing] it [was] mandated by a fair reading of the legislative will as expressed in § 12-21-109, Ala. Code 1975," this Court reaffirmed the holding in Pierce v. Orr,540 So.2d 1364, 1367 (Ala. 1989) (a case in which the Court reevaluated and reconsidered its treatment of general releases):
 "Prior to Pierce, the appellate courts of Alabama had upheld the claims of unnamed third parties and summarily discharged them under the terms of a general release; yet Alabama Code 1975, § 12-21-109, mandated the following:
 " 'All receipts, releases and discharges in writing, whether of a debt of record, a contract under seal or otherwise, and all judgments entered pursuant to pro tanto settlements, must have effect according to their terms and the intentions of the parties thereto.' [Citations omitted.]
 "The expression of the legislative will that both the terms of a release and the intentions of the parties must be considered in determining the effect of the release had been longstanding, but simply ignored by the courts prior to Pierce, except with regard to reformation, in which regard the courts made a notable exception. Trial court judgments that either set aside or reformed general releases, insofar as those releases declared noncontributing unnamed third parties to be discharged from liability, were affirmed. See Alabama Farm Bureau *Page 1314 Ins. Co. v. Hunt, 519 So.2d 480 (Ala. 1987).
 In Pierce, this Court decided to 'accept at face value' the legislative will articulated in § 12-21-109 and held:
 " 'Henceforth, unnamed third parties, referred to in the release as "any and all parties" or by words of like import, who have paid no part of the consideration and who are not the agents, principals, heirs, assigns of, or who do not otherwise occupy a privity relationship with, the named payors, must bear the burden of proving by substantial evidence that they are parties intended to be released, i.e., that their release was within the contemplation of the named parties to the release.'
"Pierce, 540 So.2d at 1367."
572 So.2d at 1256-57.
Based on the foregoing, Wedowee must prove by substantial evidence that it was a party intended to be released by Green (a named party in the release), unless Wedowee paid some part of the consideration for the release or was an agent, principal, heir of, assign of, or otherwise occupied a privity relationship with, Dr. Torsch and St. Paul (the named payors). After a careful review of the record, we conclude that, as a matter of law, Wedowee did not present substantial evidence that it was Green's intention to release it. Therefore, the trial court erroneously based its summary judgment in favor of Wedowee on the general release.[5]
 Res Judicata
The trial court, based on the authority of Green v. Manning,529 So.2d 973 (Ala. 1988), and the cases cited therein, also found Green's suit against Wedowee barred by res judicata:
 "3. This Suit is Barred by Res Judicata: . . . . As [Wedowee] points out, [Green] was obliged to assert in his first suit all claims arising out of the alleged negligent operation by Dr. Torsch. It is clear from the release that prior to dismissal of the Jefferson County suit [the medical malpractice suit against Dr. Torsch] [Green] was aware of the identity and alleged wrongful acts of [Wedowee] he now seeks to sue [on] in this case. The release in the Jefferson County suit is dated 10 days after the complaint was filed in this case. As our Court said in Green v. Manning [529 So.2d at 974].
 " '[R]es judicata bars the relitigation of a claim in a different forum when the claim involves the same parties and arises from the same facts as the previous suit. [Citations omitted.] In addition, res judicata bars [a second suit] on any part of a claim that could have been litigated in [a previous suit], even though it was not actually litigated. Therefore, any . . . claim that could have been joined with [the earlier claim] . . . is also barred.' (Emphasis added.)
 "Green v. Manning involved a situation where a plaintiff attempted to sue in state court on a claim arising from the same set of facts which had previously been made the subject of a federal court suit. The principle is the same when the first suit was a state claim. Where the release in the first suit was dated 10 days later than the complaint in this suit, it is clear that [Green] could have brought [Wedowee] . . . into the Jefferson County suit. Instead, [Green] knowingly settled that suit and dismissed it without making a claim against [Wedowee]. Therefore, the doctrine of res judicata bars this action."
". . . .
 "5. Conclusion: The Court feels that [Green] has attempted to split a cause of action, which is clearly unfair and prejudicial to [Wedowee] who [is] entitled to have all claims arising from one set of facts tried in one case. This is one main reason for the doctrine of res judicata." *Page 1315 
As we emphasized in Whisman v. Alabama Power Co.,512 So.2d 78, 81 (Ala. 1987), this Court has recognized the doctrine of res judicata in that "[t]he interest of society demands that there be an end to litigation, that multiple litigation be discouraged, not encouraged, and that the judicial system be used economically by promoting a comprehensive approach to the first case tried." See, also, Reed v. Farm Bureau Mut. Cas.Ins. Co., 549 So.2d 3 (Ala. 1989) (a case in which we said that the purpose of the doctrine of res judicata was to prohibit the relitigation of claims, so as not to unnecessarily subject a defendant to the expense and trouble of repeatedly defending himself).
 " ' "The elements of res judicata [or claim preclusion] are as follows: (1) prior judgment rendered by court of competent jurisdiction; (2) prior judgment rendered on the merits; (3) parties to both suits substantially identical; and (4) same cause of action present in both suits. If these elements are present, then the former judgment is an absolute bar to any subsequent suit on the same cause of action, including any issue which was or could have been litigated in the prior action." ' "
Sanders v. First Bank of Grove Hill, 564 So.2d 869, 872
(Ala. 1990) (quoting Leverette ex rel. Gilmore v. Leverette,479 So.2d 1229, 1235-36 (Ala. 1985)) (quoting Wheeler v. FirstAlabama Bank of Birmingham, 364 So.2d 1190, 1199 (Ala. 1978));Cornelius v. Green, 521 So.2d 942 (Ala. 1988). See, also, Hughesv. Martin, 533 So.2d 188 (Ala. 1988).
In Whisman v. Alabama Power Co., supra, at 82-83 (quotingCentury 21 Preferred Properties, Inc. v. Alabama Real EstateCommission, 401 So.2d 764, 770 (Ala. 1981)), this Court stated as follows:
 " 'Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies. Res judicata applies where the parties to both suits are "substantially identical."
 " 'Judgments can bind persons not party (or privy) to the litigation in question where the nonparties' interests were represented adequately by a party in the original suit. A person may be bound by a judgment even though not a party to a suit if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative. Moreover, if a party has a "sufficient 'laboring oar' in the conduct" of the litigation, then the principle of res judicata can be actuated.' "
(Citations omitted.)
Green contends that the trial court could not have found the elements necessary to establish the applicability of the doctrine of res judicata to the facts of this case and therefore could not properly have used the res judicata doctrine as a basis for its summary judgment for Wedowee. Green points out that the initial suit was a medical malpractice action against Dr. Torsch; that that suit asserted no cause of action in fraud against Dr. Torsch; that the parties to the medical malpractice suit (Green and Dr. Torsch) are not identical to the parties in this case (Green and Wedowee); that the facts necessary to establish Green's right to recovery in the medical malpractice action against Dr. Torsch are not necessary whatever to a determination that Wedowee committed fraud on Green; and that the facts necessary to prove the causes of action against Wedowee would not have served as a basis for establishing the alleged acts of malpractice by Dr. Torsch. Rather, Green contends that this case is "totally independent" of the medical malpractice suit and that there has been no determination on the merits in either suit.
Wedowee contends that even if the release did not bar this suit, then the doctrine of res judicata would "clearly preclude [Green] from maintaining this second suit where the claims made here could have been asserted in the first suit in Jefferson County."
We have thoroughly reviewed the record and have applied the elements of res judicata to determine whether Green is precluded from pursuing this action based on that *Page 1316 
doctrine. Green sued Dr. Torsch for medical malpractice because he performed cataract surgery on the wrong eye. It was the medical malpractice suit that Green settled; there was no litigation of the issues; there was no trial on the merits; there was no final judgment rendered by a court of competent jurisdiction; nor does it appear that in the medical malpractice suit there were any allegations of fraud concerning the "experimental" nature of the surgery or the failure to obtain the necessary FDA approval to perform such surgery. See Sanders v. First Bank of Grove Hill, supra; see, also, Whisman v. Alabama Power Co., supra. Theoretically, both suits arose out of the same occurrence — the cataract surgery performed at Wedowee. However, the medical malpractice suit against Dr. Torsch involved the manner in which Dr. Torsch performed the surgery and the ultimate result of that surgery. The fraud action against Wedowee involved its alleged failure to obtain FDA approval for performing the "experimental" surgery and its alleged failure to inform Green of the "experimental" nature of the surgery. The fraud action against Wedowee is separate and distinct from the medical malpractice action filed against Dr. Torsch for performing surgery on the wrong eye. Therefore, the doctrine of res judicata does not act as a bar. Therefore, the trial court could not properly have based its summary judgment for Wedowee on the doctrine of res judicata.
Based on the foregoing, we reverse the summary judgment in favor of Wedowee and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.
ALMON, J., concurs in the result.
[1] Surgidev Corporation manufactured and distributed a certain intraocular lens (known as a Surgidev Style 10 Intraocular Lens or a Leiske Lens) that was implanted in Green's eye.
[2] Outrageous conduct was not specifically addressed by the trial court or argued in briefs to this Court. Therefore, that issue is not before us. Ex parte Riley, 464 So.2d 92 (Ala. 1985).
[3] We note that in its motion for summary judgment, Surgidev adopted the motion and brief that Wedowee had filed in support of its motion for summary judgment.
[4] Although Green designated Surgidev as an appellee to this appeal, as evidenced by the notice of appeal ("Notice is hereby given that [Green] appeals . . . from the Order on Motion for Summary Judgment dated June 13, 1990, entered in this cause [which order entered judgment as to 'all defendants' and dismissed the suit]") and by the certificate of filing (which certificate designated the attorney for Wedowee and the attorney for Surgidev as "counsel for appellee[s]"), Green contends in his brief that the suit against Surgidev is still pending and fails to present and argue any issues in his brief as to Surgidev. However, because the trial court entered summary judgment as to "all defendants," that judgment was final as to Wedowee and as to Surgidev.
We note the well-settled law, as Surgidev points it out in its brief, that a party's failure to argue an issue in brief to an appellate court is tantamount to a waiver of that issue on appeal and that an appellate court will consider only those issues that have been properly delineated and will not search the record for errors that have not been raised before the appellate court. Ex parte Riley, 464 So.2d 92 (Ala. 1985). Therefore, the propriety of the trial court's entering judgment for Surgidev is not before us.
[5] Note: The author of this opinion dissented in Pierce v. Orr,540 So.2d 1364 (Ala. 1989), based on what he considered to be a departure from stare decisis. See, 540 So.2d at 1367. However, because Pierce is presently the law concerning general releases, the author of this opinion resolved this issue accordingly.