[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

-----------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 5, 2005
THOMAS K. KAHN
CLERK

No. 04-15114
Non-Argument Calendar

-----------------------------------------

D. C. Docket No. 03-00739-CV-1-BH-C

MICHAEL REEDY,
CYNTHIA REEDY,

Plaintiffs-Appellants,

versus

ARMSTRONG-MCCALL, INC.,

Defendant-Appellee.

-------------------------------------------------------------------

Appeal from the United States District Court
for the Southern District of Alabama

-------------------------------------------------------------------

(May 5, 2005)

Before EDMONDSON, Chief Judge, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Michael and Cynthia Reedy appeal the district court's order granting summary judgment in favor of Armstrong-McCall, Inc. ("AM"), in this diversity jurisdiction case alleging fraud and tortious interference with contractual relations. No reversible error has been shown; we affirm.

This case arises out of the Reedys' sale of their AM distributorship rights to Andrew and Elizabeth Gorman. In 1986 the Reedys entered into a distribution agreement with AM's predecessor, AMCO Warehouse, Inc. ("AMCO"), to buy cosmetic products from AMCO and to distribute these products in the southwest Alabama region. The distribution agreement provided that the Reedys' rights under the agreement were not assignable unless the assignment was approved by AMCO.

In spring 2000, Plaintiffs decided to sell their business -- and give up their rights under the distribution agreement -- to the Gormans. In March 2000, the Gormans submitted their franchise application to AM, which AM approved. During this time, Plaintiffs had negotiated and drafted, but had not yet executed, a sales contract to sell their business to the Gormans.

2

On 26 May 2000, AM and the Gormans entered into a distribution agreement: the Gormans were to become the AM distributor for the Alabama territory previously served by the Reedys. The Reedys were not a party to this agreement, which provided that the Gormans could not assign their rights under the agreement without the approval of AM.

The same day, the Reedys executed a release of any and all claims against AM, in consideration of AM's approval of the assignment of the Reedys' interest in the distribution agreement.[1] AM's approval of the assignment of distribution rights was contingent on the Reedys executing the release. The Reedys admitted that they executed the release with full knowledge of its contents and after consulting their lawyer.

---

[1] The release provided:

> We, MIKE AND CINDY REEDY, in consideration of [AM]'s . . . approval of the assignment of all or a portion of [the Reedys'] interest in [the distribution agreement], . . . do hereby release and forever discharge [AM] and all of its subsidiaries and affiliates and all of their employees, successors, and assigns, from any and all claims, demands, damages, actions, causes of action, expenses, or other matters, suits or attorney's fees or court costs incurred or which might be incurred, known or unknown, arising at law or in equity, based on statutory or common law (including [AM]'s negligence) or contractual provisions, arising from or related to any transactions between [the Reedys] and [AM], and arising at any time up to and including the date hereof. This is intended to be, and shall be construed as a general release by [the Reedys] of all possible persons who are, were or have been employees, directors, officers, or independent contractors of [AM] or its affiliates or subsidiaries.

3

On 31 May 2000, the Reedys and the Gormans executed a sales contract where the Reedys agreed to "sell" their sales territory to the Gormans for $225,000, payable over 10 years. The sales contract contained a provision that, if the Gormans defaulted on their payments to the Reedys, the Reedys had the right to assume control of the sales area. If the Gormans did not cure the default within ten days of being notified by the Reedys, the Reedys would have "the discretion [to] activate their right of reentry . . . and take over the business, including . . . all the right title and interest therein as described in" the sales contract.

AM was not a party to the sales contract between the Reedys and the Gormans. The contract was not supplied to AM for review or approval; AM was not consulted about the contents of the contract. And AM did not make a representation to the Reedys about permitting them to reenter the distribution area and reinstate their distribution rights as set forth in the sales contract. Instead, Mr. Reedy testified that, based on conversations he had over many years with members of AM management, he acted on what he believed to be AM's long-standing policy of allowing former distributors to "re-enter" a franchise when the purchaser defaulted.

The Gormans were not successful distributors of AM products; and, in April 2003, AM terminated their franchise and distribution rights. At some point, the

4

Gormans defaulted on their contractual obligations to the Reedys and filed for bankruptcy. The Reedys attempted to exercise their right to reenter the distribution agreement. But AM refused to allow the Reedys to reinstate themselves as AM's distributors in southwest Alabama.

The Reedys filed the instant suit, alleging that AM committed fraud (1) by representing that it had approved the sale of the distributorship to the Gormans, including the sales contract containing the reentry provision, when AM in fact did not approve of the terms of the sales contract, and (2) by concealing that it would refuse to honor the terms of the sales contract. The Reedys further alleged that AM intentionally interfered with the Reedy-Gorman contractual relationship. The district court granted AM's motion for summary judgment, determining that the Reedys had released AM from the claims asserted in this suit; alternatively, the district court rejected the substance of the Reedys' fraud and tortious interference claims.

We review the district court's rulings on a motion for summary judgment de novo; we view all evidence and factual inferences therefrom in the light most favorable to the non-moving party. Miller v. King, 384 F.3d 1248, 1258-59 (11th Cir. 2004). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Reedys argue that the release was unenforceable because of a lack of consideration. They assert that the consideration for their release of claims against AM was AM's approval of and permission to sell their interest to the Gormans; they claim that AM did not later "follow through" on its approval of the sale when it refused to allow the Reedys the right to reenter as distributors. We disagree.

Alabama law provides that "[a]ll . . . releases . . . in writing . . . , must have effect according to their terms and the intentions of the parties thereto." Ala. Code § 12-21-109. "[A]bsent fraud, a release, supported by valuable consideration and unambiguous in meaning, will be given effect according to the intention of the parties from what appears in the four corners of the document itself; and parol evidence is not admissible to impeach or vary its terms." Wayne J. Griffin Elec., Inc. v. Dunn Constr. Co., 622 So. 2d 314, 317 (Ala. 1993).

The record, taken in the light most favorable to the Reedys, shows that they executed the release with full knowledge of its contents and after consulting their lawyer. And the terms of the release are unambiguous: the Reedys agreed to release forever AM from all claims, known or unknown, related to any transactions between the Reedys and AM, arising up to the date of the execution

6

of the release. The scope of the release includes the Reedys' claims in this suit. As the district court wrote, "the release clearly expresses the parties' intent to end the distributorship and to release all claims arising out of that relationship, and that contract must be given effect as a matter of law."

We reject the Reedys' argument about a lack of consideration. The release states that the consideration, in exchange for the Reedys' release of claims, was "[AM]'s . . . approval of the assignment of all or a portion of [the Reedys'] interest in [the distribution agreement]." Contrary to the Reedys' argument, AM provided the stated consideration: it approved the transfer of the Reedys' interest under the distribution agreement, which allowed the Reedys to sell their distributorship to the Gormans.

The Reedys contend that the consideration consisted of AM's approval of the "sale or assignment from the Reedys to the Gormans." And this, the Reedys suggest, included AM's implicit approval of the Reedy-Gorman sales contract containing the reentry provision. But the release is unambiguous: it says nothing of the sales contract and does not in any place mention the sale. And the release does not reference a retained right of reentry exercisable in the sole discretion of the Reedys. See Nix v. Henry C. Beck Co., 572 So. 2d 1214, 1216 (Ala. 1990) (stating that a court must give the words of the release their ordinary meaning).

7

To the contrary, the release evidences an intent to end completely the distributor relationship between the Reedys and AM. To read the release language in the manner suggested by the Reedys would have the effect of binding AM to a contract that it was not a party to and had not reviewed, and the terms of which were contrary to the distribution agreements, which required AM's approval of the assignment of distribution rights.

In sum, the Reedys executed a valid, unambiguous release of the claims asserted in this lawsuit. The district court did not err in granting summary judgment in favor of AM on this basis.[2]

**AFFIRMED.**

---

[2] Because we agree that the release bars the Reedys' underlying fraud and tortious interference claims, we do not address the merits of those claims.