MOORE, Chief Justice.
This appeal arises out of an action seeking damages for an injury to, and ultimately the death of, Wilford Smith, a patient at the Bill Nichols State Veterans Home (“the Veterans Home”), allegedly caused by negligence and medical malpractice on the part of Dr. Timothy Corbin and others. The trial court denied Dr. Corbin’s motion for a summary judgment, and he petitioned for permission to appeal from an interlocutory order under Rule 5, Ala. R.App. P. We granted the petition to determine whether a release discharging a person from liability in one capacity also discharges a person from liability in another capacity. We affirm.
On May 4, 1998, Wilford Smith, through his son Wilford G. Smith (“Terry”), who was also his guardian, sued the Veterans Home including its administrative staff and employees; Service Master Diversified Health Service, L.P.; the City of Alexander City; Alexander City Fire and Rescue; and several fictitiously named defendants, alleging negligence, wantonness, and breach of contract, arising out of an incident that occurred while Wilford was a resident of the Veterans Home. The complaint was amended a number of times, and the sixth amended complaint named Dr. Corbin as a defendant and asserted negligence and medical-malpractice claims against him as Wilford’s treating physician.
The complaint alleged that Wilford suffered a broken neck as the result of a fall that occurred at the Veterans Home. It alleged that although Wilford exhibited several serious symptoms immediately following the fall, Dr. Corbin and the nurses who responded to the fall failed to take adequate precautions; they lifted Wilford and placed him in a chair. The Smiths alleged that Wilford, who suffered a broken neck in the' fall, should have been stabilized before he was moved. They argued that the failure to stabilize him resulted in a partial dislocation of the cervical vertebrae and in severe, permanent damage to Wilford’s spinal cord, which resulted in paralysis, quadriplegia, ventilator dependency, and eventual death.
Approximately a year after the incident, Wilford died, and Terry, as the administrator of Wilford’s estate, was substituted as the plaintiff in the case. On September 13, 1999, Terry entered into a pro tanto release, releasing from liability most of the *612 defendants, including Service Master Diversified Health Service, L.P., and the Veterans Home and its agents, servants, and employees, which included the nurses and Dr. Corbin in his capacity as the medical director of the Veterans Home; however, the release expressly reserved the right to sue Dr. Corbin in his capacity as Wilford’s treating physician at the time of incident. Wilford’s estate received $1 million in exchange for entering into the release.
Subsequent to the execution of the release, Dr. Corbin moved for a summary judgment, arguing that the release, which operated to release him in his capacity as medical director, also released him from liability in his capacity as Wilford’s physician, because, he argued, the claims against him as medical director and as Wilford’s treating physician arise out of an alleged single breach of the standard of care. After submission of material from both sides and a hearing on the motion, the trial court denied Dr. Corbin’s summary-judgment motion. On July 10, 2001, the trial court entered an order stating that because the case involves a controlling question of law that has not been specifically decided by this Court, an immediate appeal would materially advance the ultimate determination of the case. See Rule 5, Ala. R.App. P. Dr. Corbin then petitioned for permission to appeal, which we granted.
There is essentially only one issue before us: Whether the plaintiffs release of Dr. Corbin in his capacity as the medical director of the Veterans Home also operates to release him in his capacity as Wilford’s treating physician, when the allegations against Dr. Corbin as Wilford’s treating physician involve the same alleged acts or omissions complained of in the action against him as medical director.
On its face, the release is very clear with respect to Dr. Corbin:
“[T]he undersigned does specifically reserve and retain, without any impairment thereto, its full and complete right to proceed and to pursue all claims against the remaining defendants including but not limited to Dr. Timothy Cor-bin solely in his capacity as the treating or attending physician of Wilford Smith and as a result of said individual rendering professional services to Wilford Smith.... The plaintiff does hereby confirm any claims which have been asserted or could be asserted against the released parties for any acts or omissions, if any, committed by Dr. Timothy Corbin for his performance of duties in his capacity as medical director of the Bill Nichols State Veterans Home are hereby released[;] however the undersigned does hereby specifically reserve and retain any and all claims against Dr. Timothy Corbin for errors and/or omissions committed by him while acting as an attending physician (i.e., providing professional services) of Wilford Smith.”
Despite the clear language of the release, Dr. Corbin argues that the language releasing him from liability in his capacity as medical director also releases him from liability in his capacity as Wilford’s treating physician. This is so, he argues, because both claims arise from one incident, during which Dr. Corbin was acting as both medical director and as Wilford’s personal physician; thus, he argues, only one breach of duty is alleged to have occurred. Dr. Corbin argues that because any liability for Wilford’s injury and subsequent death arises from one breach of duty, the release, which expressly excuses Dr. Cor-bin from liability in his capacity as medical director, excuses him from liability in both capacities.
As support for this proposition, Dr. Cor-bin cites Ex parte Jamar, 703 So.2d 879 *613 (Ala.1997).[1] In Jamar, the plaintiff Raymond Jamar was injured in a vehicle accident caused by a truck transporting a mobile home for Valley Manufactured Homes, Inc. Jamar sued the company; Trent James, Valley’s owner, who was driving the transport truck that collided with Jamar’s vehicle; the driver of the other transport truck; and one of the drivers hired by Valley to “escort” the transport trucks. James and Valley settled with Jamar, and Jamar executed a release in favor of those defendants. The release also purported to release the two other defendants, “to the extent that they were acting ‘under the direction and control of Valley Manufactured housing and/or Trenton James’ as their ‘agents, servants or employees’ or ‘independent contractor[s],’ at the time of the accident.” 703 So.2d at 881.
The other defendants moved for a summary judgment based upon the release. Jamar opposed the motion and presented substantial evidence indicating that the two men were not “employees” of Valley. The Court agreed that they were not employees, but it concluded that they were agents of Valley, and that they thus were released from liability based upon the signed release.
Dr. Corbin argues that the same scenario exists in this case. He argues that the release settling the issue of Dr. Cor-bin’s liability as medical director also resolved his liability as Wilford’s treating physician because, he says, the liability arose from a single breach of duty. Dr. Corbin contends that because the allegations against him in both capacities arise from one incident, the release, which specifically releases him from liability for any acts or omissions that may have occurred in his performance as medical director, also releases him from liability for any acts or omissions that might have occurred in his performance as Wilford’s treating physician in this case.
This case differs markedly from Jamar, however. Unlike the driver defendants in Jamar, who were sued in their capacities both as agents and as individuals, Dr. Cor-bin has not been sued in a personal capacity — he has been sued in his professional capacities as medical director of the Veteran’s Home and as Wilford’s treating physician. The conduct made the basis of the action in Jamar was negligence for a certain act committed by the driver defendants, whether as individuals or as agents of Valley. In this case, Terry asserted a negligence claim against the Veterans Home and its agents and specifically asserted a medical-malpractice claim against Dr. Corbin before entering into the release. Dr. Corbin’s positions as medical director of the Veterans Home and as Wilford’s treating physician involve separate duties, even though the injury here was alleged to have resulted from the same conduct; whereas the duties of the driver defendants in Jamar as agents and their duties as individuals were not separate and distinct.
Separate duties give rise to separate causes of action. As the United States Supreme Court has explained: “acts performed by the same person in two different capacities ‘are generally treated as the transactions of two different legal personages.’ ” Bender v. Williamsport Area School District, 475 U.S. 534, 543 n. 6, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (quoting F. James & G. Hazard, Civil Procedure *614 § 11.6, p. 594 (3d ed.1985)). In Jamar no duty existed for the drivers beyond the ordinary negligence standard, whether in their individual capacities or in their capacities as agents of Valley.
From Dr. Corbin’s deposition testimony, it is clear that he held two positions at the Veterans Home: he was the medical director of the facility and he was a treating physician. Dr. Corbin is a family practitioner who maintains a private practice in Alexander City. As part of his practice, he sees patients at three other nursing homes, and he sees the residents at the Veterans Home as a physician, in addition serving as the medical director of that facility. As a treating physician, Dr. Cor-bin billed his patients at the Veterans Home through Medicare for the services he rendered during his regular rounds there. He says he did not bill Wilford for the services he rendered on the day of the incident because he was called to the room as an emergency. Dr. Corbin stated that he did nothing that day to Wilford that he would not have done had he been acting only as a physician, rather than as a physician and as the Veterans Home’s medical director. He also confirmed that he had never been told, either orally or in writing, that one of his duties as medical director was to respond to patients in the nursing home who had fallen. The release, quoted above, also makes a clear distinction between the two capacities.
It is true that when asked whether on the day of the incident he was acting as Wilford’s physician or as the medical director of the Veterans Home, Dr. Corbin responded, “It’s hard to say which. I mean, I’m both. But I’m the medical director. I saw the patient, but then I billed for professional services.”[2] To another question regarding his two roles at the Veterans Home, Dr. Corbin stated: “I can’t really separate those with me being the same, one and the same, I mean.” And again, he commented, “I mean, I’m always both. But at that point, I saw the patient....”
Dr. Corbin’s inability to say whether he was acting as medical director or as a private physician on the day of the incident does not mean that the two positions were one and the same, with the same responsibilities. In fact, it is clear from the foregoing facts that while Dr. Corbin could act as a treating physician and as medical director at the same time, each position could also have separate responsibilities. This distinction is only logical, because if no difference existed between the two positions, Dr. Corbin would not hold them both; he would simply be a physician and not a medical director, as he is when he visits three other nursing homes, or medical director of the Veterans Home but not a treating physician there. We are not told what his specific responsibilities as medical director entail, but it is not necessary that we know those responsibilities in order to make a decision in this case because the release clearly discharged Dr. Corbin from any liability arising from those responsibilities.
If we were to accept Dr. Corbin’s position, the result would be a loss of accountability where the behavior of physicians is concerned. The implication of Dr. Corbin’s argument is that he ceased being a physician simply because he was also acting as the medical director, even though he was treating a patient during the incident that is the basis for this action. Agreeing with Dr. Corbin’s position would be tantamount to saying that he did not have to meet the *615 standard of care required of a doctor simply because he was also serving as medical director. We do not consider such a position — that doctors can avoid medical-malpractice liability simply by wearing multiple hats — to be the law of Alabama.
Dr. Corbin’s duties as medical director differed from his duties as a treating physician where the care of a patient such as Wilford was concerned. Dr. Cor-bin was not released from liability related to his duty as a treating physician, any breach of which gives rise to a claim for medical malpractice. A doctor has a “legal duty ... to exercise the degree of reasonable care, diligence, and skill that reasonably competent physicians in the national medical community would ordinarily exercise when acting in the same or similar circumstances.” Bradford v. McGee, 534 So.2d 1076, 1079 (Ala.1988). The release did not relieve Dr. Corbin of this duty; his job as a physician involves duties that are distinct from his job as medical director. Separate liability gives rise to separate causes of action; thus, Terry is not barred from suing Dr. Corbin in his capacity as Wilford’s treating physician.
The release was clear; there is no reason to believe that it did not represent the intent of the parties when it was executed. “ ‘In the absence of fraud, a release supported by a valuable consideration, unambiguous in meaning, will be given effect according to the intention of the parties.... ’ ” Alabama Farm Bureau Ins. Co. v. Hunt, 519 So.2d 480, 481-82 (Ala.1987), quoting Conley v. Harry J. Whelchel Co., 410 So.2d 14, 15 (Ala.1982). The release put Dr. Corbin on notice that he could still be held hable in his capacity as Wilford’s treating physician.
Any liability from which Dr. Corbin was released did not include the potential liability for performing his duties as Wilford’s treating physician. He remained a doctor while serving as medical director; thus, he could not escape the responsibilities of a physician when treating a patient. Therefore, a genuine issue of material fact exists as to Dr. Corbin’s liability in this incident, and that potential liability is not precluded by the release executed between the parties. The trial court correctly denied Dr. Corbin’s summary-judgment motion.
AFFIRMED.
HOUSTON, SEE, BROWN, and JOHNSTONE, JJ„ concur.
HARWOOD, J., concurs specially.
LYONS, WOODALL, and STUART, JJ., concur in the result.

. We decline to address Dr. Corbin’s separate argument based on Justice See’s concurrence in Jamar — that the action against him in his capacity as Wilford’s treating physician is barred by the doctrine of res judicata. The scenario posed in Justice See’s special writing is hypothetical; it does not apply in this case.

. This last statement was later clarified as being in error. Dr. Corbin did not bill for services on the day in question, but the fact that he was both the medical director and a treating physician at the time would not have prevented him from doing so.